## UNITED STATES v. ONE FORD COUPE, 1937 MODEL, ENGINE NO. 18—3902031, VA. LICENSE NO. 267—183 (1939).

District Court, W. D. Virginia, at Lynchburg.

June 7, 1940.

Frank S. Tavenner, Jr., U. S. Atty., of Woodstock, Va., for libellant.

George Abbitt, of Appomattox, Va., for respondent.

### Findings of Fact.

BARKSDALE, District Judge.

The automobile which is the subject of this libel is a 1937 Ford Coupe, the property of one McDowell Thompson. At the time of the seizure, McDowell Thompson, his mother, Bessie Thompson, and his sister, Margaret Thompson, lived together at the mother's residence in a remote section of Nelson County, and all three were engaged in the manufacture and sale of illicit liquor, the same being manufactured at an illicit distillery about three-fourths of a mile from the said dwelling house and which was in operation at the time of the seizure. Upon the premises there were a dwelling house, a garage and a stable, none of which were enclosed. The distance from the side steps of the residence to the garage door, is 52 feet, 7 inches. The garage has three doors, eight feet in width, only one of which was open at the time of the seizure. When seized, the said Ford Coupe was in the garage, and a Chevrolet Coupe, in which illicit liquor was found, was parked 23 feet from the garage door.

On December 16, 1939, when the said Ford Coupe was seized, McDowell Thompson, its owner, was at home. Between 7:30 A. M. and 7:50 A. M., a negro carried six 100-pound bags of sugar, from the Chevrolet Coupe parked outside, into the garage where McDowell Thompson's Ford Coupe was stored. About 8 A. M., he and the negro left the premises, the negro carrying two empty 10-gallon kegs, one of which McDowell Thompson helped him place on the end of a stick for carrying it over his

shoulder. They went off in the direction of the still. Margaret Thompson drove the Chevrolet Coupe away at 8:50 A. M., and returned at 10:20 A. M. The negro, who returned shortly after 10:30, carried 300 pounds of sugar from the Chevrolet Coupe into the garage where said Ford Coupe was stored, and another negro, who had come to the house with Margaret Thompson, carried 100 pounds of sugar from the Chevrolet Coupe into this garage, which together with the sugar which was already in the garage made a total of 1,000 pounds of sugar therein. This sugar was for the purpose of the manufacture of illicit liquor. One of the negroes then brought a 10-gallon keg of illicit liquor from this garage and placed it in the rear of the Chevrolet Coupe, which was parked 23 feet from the garage door. He then drove a ground slide away loaded with six 10-gallon kegs, and returned at 12:45 P. M. with McDowell Thompson who was driving the ground slide loaded with five 10-gallon kegs of illicit liquor which were placed in the stable. The stable door was 120 feet from the garage door. The Ford Coupe was not moved while the occurrences recited above were taking place, nor were any illicit raw materials, or other contraband, found in the said Ford Coupe.

### Conclusions of Law.

The applicable statute, Title 26, Sec. 3720 (a), U.S.C.A. Int.Rev.Code, is as follows:

"§ 3720. Seizure of forfeitable property

"(a) Property subject to seizure and forfeiture

"(1) Manufactured articles. All goods, wares, merchandise, articles, or objects, on which taxes are imposed, which shall be found in the possession, or custody, or within the control of any person, for the purpose of being sold or removed by him in fraud of the internal revenue laws, or with design to avoid payment of said taxes, may be seized, and shall be forfeited to the United States.

"(2) Raw materials. All raw materials found in the possession of any person intending to manufacture the same into articles of a kind subject to tax for the purpose of fraudulently selling such manufactured articles, or with design to evade the payment of said tax, may also be seized, and shall be forfeited as aforesaid.

"(3) Equipment. All tools, implements, instruments, and personal property whatsoever, in the place or building, or within any yard or inclosure where such articles or raw materials are found, may also be seized, and shall be forfeited as aforesaid."

Subsection (3) is the pertinent section.

Respondent concedes that the language, "all * * * personal property whatsoever, in the place or building, * * * where such articles or raw materials are found, * * *", if given its literal meaning, would include the Ford automobile in question, as it is conceded that it was found in the garage building which also contained raw materials, i. e., sugar; and which also contained illicit liquor. However, he contends that the literal meaning of the above quoted language of the statute should not be applied, but that the language should be restricted to such personal property as has some relation to the offense condemned by the statute, and relies on United States v. Ryan, 284 U.S. 167, 52 S.Ct. 65, 76 L.Ed. 224; United States v. Jenello, 3 Cir., 102 F.2d 587; United States v. One Ford Station Wagon, D.C., 24 F.Supp. 350; and United States v. One 1935 Pontiac Sedan, D.C., 24 F.Supp. 745.

Libellant, in its brief, concedes that the language of the statute should not be given its literal meaning, but should be so restricted as to exclude articles of personal property which could have no relationship to the offense charged or which are in no way incident to the intended use or disposition of the contraband goods.

I am fully in accord with the view that the phrase, "all * * * personal property whatsoever", must be given a restricted meaning. The principle of ejusdem generis, or of noscitur a sociis, must be applied. To give this phrase its literal meaning, might lead to highly unreasonable, if not absurd, consequences which might well be in contravention of the Fifth Amendment. Consequently, the Supreme Court, in the case of United States v. Ryan, supra, has sanctioned a restricted construction of the phrase. However, I do not believe that the Ryan case is authority for the extent of restriction here contended for by respondent.

I am thoroughly in accord with the holdings of the other cases cited by respondent. In United States v. Jenello, supra, the court refused to enforce the forfeiture of rings and currency found in a safe upon premises which also contained tax unpaid

spirits. Obviously, such articles of personal property could have no relation to, nor be incident to, such violations of law as are embraced within the statute.

In the case of United States v. One Ford Station Wagon, supra, an illicit distillery was found in a dwelling house. A board walk led to a store house at the rear of the lot facing another street. Facing the same street as the store, there was a two-car garage separated from the store by a high board fense. The automobiles sought to be forfeited, were found in this garage. As the court said [24 F.Supp. 352]: "They were found in a garage some distance from the illegal still and no contraband of any kind was found in them or in the garage in which they were located. There is nothing in the evidence connecting the automobiles in any way with the offense condemned, and there is no evidence from which it could be found that the automobiles were actually used either in the unlawful business or any other business openly carried on upon the premises as was found as to the personal property forfeited in United States v. Stowell, supra [133 U.S. 1, 10 S.Ct. 244, 33 L.Ed. 555]." The court properly refused to enforce a forfeiture.

In the case of United States v. One 1935 Pontiac Sedan, supra, the court in refusing to enforce a forfeiture, again pointed out that there were no contraband goods in the garage where the automobile was stored, and the evidence was overwhelming that there was no possible connection between the automobiles sought to be forfeited and the illicit liquor found in the dwelling.

In United States v. Ryan, supra, which is the leading case on this question, the Supreme Court has applied a yardstick for measuring the extent of the forfeiture sanctioned by the statute, which is as follows [284 U.S. 167, 52 S.Ct. 68, 76 L.Ed. 224]: "* * * The taxed articles and the raw materials intended for manufacture are the principal things aimed at by the statute. Tools and implements by their use are connected incidents. By reason and analogy, as well as by context, we conclude that the general words 'all personal property whatsoever' were intended to include chattels other than the specified tools and implements, but to be restricted to those which, like tools or implements, *are related to one or the other of the principal things, or incident to their intended use or disposition in fraud of the revenue.* * * *" (Italics mine).

The other cases cited by counsel are the efforts of the lower courts to apply this yardstick.

Under the facts here presented, the question is not one which is entirely free from difficulty. An automobile is quite susceptible to exclusively legitimate uses; on the other hand, it is equally as susceptible to uses entirely illegitimate, such as in this case, transportation of men and raw materials for the manufacture of illicit liquor, and the transportation of such liquor after its manufacture. It is true that no such use was proven as to the Ford Coupe in question. However, the evidence shows that the other automobile there present was actually used on the morning of the seizure, for the transportation of both persons and raw materials for the illicit manufacture of liquor, and that, not only raw materials, but tax unpaid liquor, were .stored in the garage with the Ford Coupe. Three members of the household, including the owner of the automobile in question, were actively and presently engaged in the manufacture and disposition of tax unpaid liquor.

The evidence shows that the home and curtilage where this seizure took place, is in the country, remote from the source of supply of raw materials, and equally or more remote from the market for the finished product. At least five adult persons were engaged in the illicit manufacture and disposition of tax unpaid spirits, and the operation was obviously one of magnitude. The use of two automobiles therein was by no means disproportionate to the extent of the operation.

It is impossible for me to escape the conclusion that the Ford automobile here sought to be forfeited, was "related to one or the other of the principal things [i. e., the illicit whiskey and the raw materials], or incident to their intended use or disposition in fraud of the revenue." Therefore, an order will be entered directing its forfeiture.