## KINSTON AUTO FINANCE CO. v. UNITED STATES.

### No. 6061.

United States Court of Appeals
Fourth Circuit.

Argued April 14, 1950.

Decided May 24, 1950.

F. E. Wallace, Jr., and F. E. Wallace, Sr., Kinston, N. C. (Wallace & Wallace, Kinston, N. C., on brief) for appellant.

Logan D. Howell, Asst. U. S. Atty., Rawleigh, N. C., (John H. Manning, U. S. Atty., Raleigh, N. C., and Howard H. Hubbard, Asst. U. S. Atty., Clinton, N. C., on the brief), for appellee.

Before PARKER, Chief Judge, DOBIE, Circuit Judge, and HAYES, District Judge.

DOBIE, Circuit Judge.

United States of America, libelant, filed in the District Court of the United States for the Eastern District of North Carolina a libel of information against the Mercury Club Coupe automobile involved in this appeal, alleging that on the 29th day of

April, 1949, this car was used by John Finney Croom and Lynwood Earl Taylor, defendants in the libel of information, unlawfully in the removal, deposit and concealment of goods and commodities, to-wit, ten gallons, more or less, of distilled spirits, upon which taxes due the United States had not been paid, all with the intent to defraud the United States of the taxes thereon. This automobile was subsequently seized. The Kinston Auto Finance Company (hereinafter called Finance) was allowed to intervene and file an answer to the libel.

Finance, a North Carolina corporation, with its principal office in the City of Kinston, County of Lenoir, was created for the purpose (as its title indicates) of making loans on automobiles. On August 20, 1948, Finance made a loan on the automobile here involved to John Finney Croom in the sum of $1,769.04. Croom delivered to Finance a retain title note and chattel mortgage on the automobile. At the time of the seizure of the automobile, there was a balance of $982.80 due and owing to Finance by Croom.

The District Court, upon its findings of fact and conclusions of law, entered judgment condemning and forfeiting to the United States of America the Mercury Club Coupe, and ordered the Kinston Auto Finance Company, intervenor, to pay the costs of the proceeding, including storage charges due on the automobile. Finance has duly appealed to us.

The apposite statute, 18 U.S.C.A. § 3617, provides:

"*Remission or mitigation of forfeitures under liquor laws; possession pending trial —(a) jurisdiction of court*

"Whenever, in any proceeding in court for the forfeiture, under the internal-revenue laws, of any vehicle or aircraft seized for a violation of the internal-revenue laws relating to liquors, such forfeiture is decreed, the court shall have exclusive jurisdiction to remit or mitigate the forfeiture.

"*(b) Conditions precedent to remission or mitigation*

"In any such proceeding the court shall not allow the claim of any claimant for re-

mission or mitigation unless and until he proves (1) that he has an interest in such vehicle or aircraft, as owner or otherwise, which he acquired in good faith, (2) that he had at no time any knowledge or reason to believe that it was being or would be used in the violation of laws of the United States or of any State relating to liquor, and (3) if it appears that the interest asserted by the claimant arises out of or is in any way subject to any contract or agreement under which any person having a record or reputation for violating laws of the United States or of any State relating to liquor has a right with respect to such vehicle or aircraft, that, before such claimant acquired his interest, or such other person acquired his right under such contract or agreement, whichever occurred later, the claimant, his officer or agent, was informed in answer to his inquiry, at the headquarters of the sheriff, chief of police, principal Federal internal-revenue officer engaged in the enforcement of the liquor laws, or other principal local or Federal law-enforcement officer of the locality in which such other person acquired his right under such contract or agreement, of the locality in which such other person then resided, and of each locality in which the claimant has made any other inquiry as to the character or financial standing of such other person, that such other person had no such record or reputation."

The District Court specifically made findings that Finance had an interest in the automobile, that this interest was acquired in good faith, that Finance had at no time any knowledge or reason to believe that the automobile was being used or would be used in the violation of the laws of the United States or of any State relating to liquor, and that Croom had no court record for violating the liquor laws. These findings are not challenged. It is thus clear that Finance fully satisfied (b) (1) and (b) (2) of the statute set out above. We are here concerned, then, with (b) (3) of this statute.

Thus, under (b) (3) of the statute, Finance, in order to be entitled to remission, is charged with making the specified inquiry if, but only if, Croom was a "person

having a record or reputation for violating laws of the United States or of any State relating to liquor." In the briefs of both Finance and the United States, much is made of the exact meaning, in the statute, of the word "reputation."

In United States v. One Hudson Coupe, 4 Cir., 110 F.2d 300, 303, Circuit Judge Dobie, speaking for our Court, said: "The same considerations should govern reputation, under this statute. Concerning the requisite generality of 'reputation', as broadly defined, there is no question. See United States v. C. I. T. Corporation, 2 Cir., 1937, 93 F.2d 469, 471. However, it may be observed that there is a difference between a person's liquor-peddling reputation and his debt-paying and his church-going reputations, and these, we trust, will be generally known by different people. The statute, subsection (b) (3), requires that inquiry as to a person's liquor reputation be made of a specified group, who would be most likely to know it. The inquirer can then insist that he be informed of the general reputation and not of chance reports to the informant. We do not think it was the intendment of this subsection to impose the duty of inquiry only when the person's reputation for illicit dealing in unlawful liquor transactions had achieved such a notoriety that it was known or should have been known by the claimant and others in ordinary business transactions. If such a situation had existed, claimant would have been barred by subsection (b) (2). Obviously, subsection (b) (3) was directed to reach a different situation."

See, also, the opinion of Circuit Judge Soper in Universal Credit Co. v. United States, 4 Cir., 111 F.2d 764, 766. And, in accord, see Interstate Securities Co. v. United States, 10 Cir., 151 F.2d 224; United States v. One 1939 Model DeSoto Coupe, 10 Cir., 119 F.2d 516; United States v. One Ford Truck, 3 Cir., 115 F.2d 864. But see, contra, United States v. C. I. T. Corporation, 2 Cir., 93 F.2d 469.

We do not think, however, that the decision in the case before us depends upon the particular interpretation that is here placed upon the word "reputation." We prefer to rest our decision upon the proposition that, even if the reputation of Croom was such as to require the statutory inquiry, Finance has by its inquiries substantially complied with the terms of the required statutory inquiry and has thus lived up to the spirit, if not the precise letter of the statute.

In addition to inquiring of five representative citizens, Finance inquired of the Chief of Police of Kinston as to the record and reputation of Croom concerning violations of the liquor laws. A similar inquiry by Finance was made of the Chairman of the Lenoir County Alcoholic Beverage Control Board. Not only the five representative citizens but also the Chief of Police and the Chairman of the A. B. C. Board replied that Croom had no record and no reputation for violating the liquor laws. We think these inquiries formed a sufficient basis for allowing the remission sought by Finance.

The set-up in North Carolina as to liquor violations is somewhat unique. The Chief of Police had no jurisdiction to enforce the liquor laws beyond the limits of the City of Kinston. Yet, as the District Court found: "The Chief of Police of Kinston is charged with the duty of keeping the complete criminal court records of Lenoir County and the City of Kinston Municipal-County Recorder's Court, which Court has county-wide jurisdiction and maintains a complete file on all arrests and indictments made in Lenoir County." The District Court further found:

"The City of Kinston is located within Lenoir County, and * * * (Croom) lived in rural Lenoir County about 12 miles outside the corporate limits of Kinston. He not only traded in Kinston, but made frequent trips to that city.

"The office of the Sheriff of Lenoir County does not participate in the enforcement of liquor laws generally and does not give out information concerning loan applicants. The enforcement of State Laws relating to liquor in Lenoir is principally in charge of the Lenoir County A. B. C. officers.

The local Alcoholic Board of Control officers of Lenoir County used the records

and information available in the office of the Chief of Police of Kinston, since the headquarters of Lenoir County Alcoholic Board of Control enforcement officers keep and maintain no permanent records.

\*   \*   \*   \*   \*   \*

"Under the North Carolina law, as well as in fact, the Chairman of the Lenoir County A. B. C. Board, together with the other members of the Board, has general control of the operation of the liquor stores and supervision of the enforcement officers who the Board employs and discharges at will; the Chairman of the Board is not an enforcement officer and engages in none of the activities of enforcement; nor does he keep any records of reports which come to the enforcement officers or of their activities.

\*   \*   \*   \*   \*   \*

"On the date of the execution of the chattel mortgage in question and for some time previous, the owner of the automobile had a reputation with the enforcement officers of the Lenoir County Alcoholic Board of Control and with the principal federal internal revenue officer engaged in the enforcement of the liquor laws in Lenoir County for violating the laws of the United States and of the State of North Carolina relating to liquor. This reputation arose from reports made to these officers and which caused them to believe that on that date the owner was and for some time before had been actually engaged in the violation of the laws of the United States and of the State of North Carolina relating to liquor. This reputation was confined to the A. B. C. officers and the internal revenue officer, and there was no proof of a general reputation as such term is ordinarily used in the trial of a court action.

"Had the claimant inquired of any of these Lenoir County A. B. C. officers or of the principal internal revenue officer engaged in the enforcement of the liquor laws in Lenoir County as to the reputation of the owner for violating the laws of the United States of North Carolina relating to liquor, he would have received an affirmative answer."

Thus, though the Sheriff of Lenoir County had jurisdiction over the place where Croom lived, this Sheriff takes no part in the enforcement of the liquor laws and gives out no information concerning loan applicants. Inquiry of the Sheriff would, therefore, have been a futile gesture. On the other hand, the Chief of Police (of whom Finance inquired), though he had no jurisdiction over Croom's place of residence, was yet the keeper of the complete criminal court records of Lenoir County. The Chief of Police of Kinston, therefore, more than any other individual, satisfied the term "Chief of Police" as that term is used in the statute, and, seemingly, as keeper of the criminal records, he would be the person most apt to know of Croom's reputation in connection with the liquor laws.

While the Chairman of the Lenoir County Alcoholic Board of Control does not himself engage in the activities of enforcement, he yet has supervision of the enforcement officers whom the Board employs and discharges at will. Thus he approximates most closely the statutory designation of "principal local law-enforcement officer." It seems that there was no "Federal law enforcement officer" at Kinston, but the nearest one was some distance away, and the local law-enforcement officers of the Alcoholic Board of Control, under the Chairman, were continually on the move and were difficult to contact.

Speaking for our Court in United States v. One 1936 Model Ford, 4 Cir., 93 F.2d 771, 773–774, Circuit Judge Soper stated: "The claimant also complied with the conditions set out in subsection (b) (3) of the statute. It does not require, in the event that the purchaser has a record or reputation for violating the liquor laws, that the lienor shall make inquiry of all of the officials mentioned in subsection (b) (3) of the act. They are listed in the disjunctive, and it is sufficient if the lienor makes inquiry at the headquarters of one of the named officials, that is, the sheriff, the chief of police, the principal internal revenue officer engaged in the enforcement of the liquor laws, or other principal local or federal law enforcement officers \* \* \*."

Said Mr. Justice McReynolds in United States v. One 1936 Model Ford Coach, 307 U.S. 219, 226, 59 S.Ct. 861, 865, 83 L.Ed. 1249: "The section must be liberally construed to carry out the objective. The point to be sought is the intent of the law-making powers. Forfeitures are not favored; they should be enforced only when within both the letter and spirit of the law." To the same effect, see United States v. One 1941 Cadillac Sedan, 7 Cir., 145 F.2d 296; United States v. One Hudson Coupe, 4 Cir., 110 F.2d 300.

Finance here acted in perfectly good faith. We think that Finance has substantially complied with the terms of the remission statute and that the District Court, under the circumstances of this case, applied that statute too rigidly against Finance. The judgment of the District Court is, accordingly, reversed and the case is remanded to that Court with instructions to remit the forfeiture of the automobile to the extent of the unpaid balance of the loan made by Finance to Croom.

Reversed.