UNITED STATES of America, Libellant,

v.

ONE 1954 MERCURY 2-DOOR SEDAN, Motor No. 54ME–35289–M, Respondent.

UNITED STATES of America, Libellant,

v.

ONE 1940 FORD TUDOR SEDAN, Motor No. 18–5435329, One 1951 Ford ½-ton Pickup Truck, Motor No. FIRINR–16422, One 1949 Ford 1½-Ton Stake Body Truck, Motor No. 93 RT–171124, Respondents.

Misc. Nos. 1840, 1841.

United States District Court, E. D. Virginia, Norfolk Division.

Jan. 5, 1955.

William F. Davis, Jr., U. S. Atty., Norfolk, Va., for libellant.

Sacks & Sacks, Herman A. Sacks, Norfolk, Va., for respondents.

HOFFMAN, District Judge.

The above cases were heard together by agreement of counsel. They involve forfeiture proceedings for the alleged breach of the provisions of § 3116 and § 3720, Title 26 U.S.C.A. The vehicle seized in Misc. No. 1840 is titled in the name of Mrs. Jack B. Cartwright, and was appraised in the sum of $2,500. From the pleadings and statements of counsel it appears that this vehicle is subject to a lien in favor of Commercial Credit Company in an amount which is approximately the same as the appraised value. Counsel for the finance company having verbally advised the Court of an intention to file a petition for remission or mitigation, the decision now rendered as to the 1954 Mercury 2–Door Sedan will be without prejudice as to the rights of Commercial Credit Company, if any such rights exist. The remaining three vehicles are titled in the name of Jack B. Cartwright, and are appraised at $50, $250 and $350, respectively, in accordance with the manner in which these vehicles are listed in the caption of Misc. No. 1841. There are no liens on these three vehicles.

The evidence reveals that Cartwright and wife, together with their children, live on a 200-acre farm on Route 1, Hickory, Virginia, located in Norfolk County. On July 19, 1954, officers of the Virginia Alcoholic Beverage Control Board and the Alcohol and Tobacco Tax Unit visited the Cartwright premises at 9:30 P. M. They found 54 five-gallon empty jugs, together with some pipe and hose, in the basement of the farm house. They requested permission of Cartwright to search the outbuildings

and, in a chicken house located at a distance from the dwelling estimated to be between 25 feet and 150 feet, they found 60 five-gallon jugs filled with illegal whiskey on which the tax had not been paid. Cartwright had the keys to the chicken house (sometimes referred to as a smokehouse) and delivered them to the officers to unlock. Further to the rear of the chicken house and still further away from the dwelling was found a large barn in which was located a "patched up" boiler, obviously at one time used for the purpose of making whiskey.

Defendant's Ex. No. 1 is a sketch showing the physical layout of the dwelling, chicken house and large barn. Particularly of interest is a 3⅓ foot wire fence surrounding the chicken house where the whiskey was located. A gate leading from the dwelling house area to the chicken house area would not permit the passage of any automobile, but vehicles could enter the chicken house area and large barn area through the medium of a gate from the secondary highway (on which the dwelling faced) and from the cultivated farm area opposite the highway mentioned. A similar fence surrounded the large barn area. A fence also ran along the property line of the dwelling house area, but no fence separated the dwelling area from the highway.

All of the vehicles involved in these proceedings were found in the dwelling house area and within close proximity to the house itself. None of the vehicles revealed any physical evidence of having been used in connection with the making or transportation of whiskey or any of the necessary elements. A well-point was found in the 1954 Mercury, but the Court has disregarded this fact in the determination of these cases.

The wife testified that she had been married to Cartwright for 16 years and that the 1954 Mercury was used for trips to town, getting groceries, and taking the children to various places. She had no independent income and means. The money required for the purchase of the Mercury, over and above the amount loaned by the finance company, was supplied in part by her husband and in part by her brother. She admitted her familiarity with the four other vehicles (one Dodge flat bed truck not being involved herein as the same was obviously worthless), and stated that these vehicles were used in the operation of the farm. As to the 1954 Mercury she conceded that her husband had the right to use the same at his convenience and for any purpose. She denied any knowledge of the existence of any illegal whiskey until the night in question, although the Cartwrights had lived at the premises for nearly three years. She testified that she never went to, or looked into, the chicken house, although she passed it daily to reach the cow for the purpose of milking. Although the family had two hens and a rooster, they were apparently not housed in the chicken house. She failed to notice the 54 five-gallon empty jugs, pipe and hose, in the basement, although she admittedly was required to go to the basement from time to time.

Cartwright testified that the illegal whiskey had been brought to the chicken house in three separate loads by a party identified as James Stewart, an alleged resident of North Carolina. While he freely admits his assistance and guilt in unloading and storing the whiskey, he denies that the vehicles involved were used in any manner. As to the 54 five-gallon empty jugs, he stated that he had "collected them from time to time" for no particular purpose except to sell at some later date.

On this evidence Cartwright in Misc. No. 1841, and Mrs. Cartwright in Misc. No. 1840, ask the Court to deny the forfeiture.

Section 3720(a) (3), Title 26 U.S.C.A., reads as follows:

"*Equipment.* All tools, implements, instruments, and personal property whatsoever, in the place or building, or *within any yard or inclosure* where such articles or raw materials are found, may also be

seized, and shall be forfeited as aforesaid."

Section 3116, Title 26 U.S.C.A., while applicable, is not necessary to quote for the purposes of these cases.

The claimants contend that forfeiture should be denied for three reasons:

(1) The vehicles did not reveal any evidence of having been used in connection with the illegal enterprise, and

(2) The seized vehicles were not within the "inclosure" (fence) surrounding the chicken house where the whiskey was found, although these vehicles were in the "yard" of the Cartwright property and immediately next to a dwelling in the basement of which were found 54 five-gallon empty jugs, some pipe and hose, and

(3) As to the 1954 Mercury titled in the name of Mrs. Jack B. Cartwright, she was innocent of any wrongdoing on the part of her husband.

The three contentions are without merit and the vehicles must be forfeited.

■ While it is admitted that the quoted section must be construed to the end that the United States should not be permitted to cause the forfeiture of a bed, chair, or other like items of personal property contained within a dwelling or "yard" where illegal whiskey (or its elements) may be found, yet the Court must take notice of the fact that 54 five-gallon empty jugs are not merely casually collected for the purpose of resale. Neither is the Court required to accept as credible testimony such a statement as made by Cartwright that the 60 five-gallon jugs of whiskey were brought to the chicken house by a third party who is not produced as a witness. As was said by Judge Chesnut in U. S. v. One Plymouth Coupe, etc., D.C., 14 F.Supp. 610, the statute was intended to confer a reasonable discretion in relieving against forfeiture where all the facts and circumstances carry a conviction that the owner was entirely innocent and had no reason to anticipate improper use, and this is so even though the testimony

is uncontradicted. In the opinion of the Court one or more of the vehicles involved had been used and/or were to be used in furtherance of the illegal enterprise. To hold otherwise would afford relief against forfeiture in cases involving vehicles parked in the immediate vicinity of "stills", and would encourage operators to "vacuum" the vehicles after illegal use, thereby destroying the physical evidence. While it may be true that each and every vehicle had not been so used, or even that such use was so contemplated, relief against forfeiture was designed to protect the innocent and not the guilty. Forfeiture proceedings are civil in nature and the burden is upon the Government to prove its case only by a preponderance of the evidence from all the facts and circumstances.

■ To construe literally the claimant's second contention would mean that a "bootlegger" could erect a small wire fence around a still, thereby creating an "inclosure", and thereafter park any number of vehicles without the "inclosure" avoiding danger of forfeiture. The statute uses the term "within any *yard or inclosure*". It is stated in the alternative. All of the real property was owned by Cartwright. The factual situations presented in U. S. v. One Chevrolet Sedan, D.C.R.I., 54 F.Supp. 553, and U. S. v. Stewart Truck, D.C.W.D.N.Y., 36 F. Supp. 353, afford no relief to the claimants herein. In the case of U. S. v. One Ford Station Wagon, D.C.M.D.Pa., 24 F.Supp. 350, strongly relied upon by claimants, a walkway from the dwelling house, in which the still was located, led to a store facing another street. There was a two-car garage, within the inclosure of the lot on which the store was located, separated from the store by a high board fence. The search warrant issued did not authorize inspection of the garage. No whiskey or other contraband was found other than in the dwelling house. Two automobiles were seized in the garage and forfeiture was denied. It must be noted that the property was located within the City of Wilkes Barre,

and not in a farm area such as involved herein. Judge Barksdale distinguishes the foregoing authority in U. S. v. One Ford Coupe, etc., D.C., 33 F.Supp. 291, 293, and points out that the words "all personal property" includes items which " 'are related to one or the other of the principal things, or incident to their intended use or disposition in fraud of the revenue' ". In the last cited case the forfeited vehicle was not moved, nor were any illicit raw materials or other contraband found in the vehicle. There was, however, evidence that a quantity of sugar was taken from another vehicle and stored in the garage in which the forfeited vehicle was located. In the instant case, while admittedly some of the vehicles involved must have been used in legitimate farm operations, it is impossible for this Court to escape the conclusion that one or more of the vehicles were at least " 'incident to their intended use or disposition in fraud of the revenue' ". Courts should not create a haven for bootleggers merely because the evidence does not reveal which particular vehicle was intended to be used in fraud of the revenue.

We come now to the 1954 Mercury owned by Mrs. Cartwright. The mere fact that this vehicle is titled in her name affords no protection. She did not use her own funds to make the purchase. This Court has previously passed upon this question in U. S. v. One Ferguson Farm Tractor, D.C., 125 F.Supp. 580. To the same effect see: U. S. v. One 1937 Ford Truck, D.C., 29 F.Supp. 278; U. S. v. One 1941 Ford 2 Ton Truck, D.C., 95 F.Supp. 214; and U. S. v. One Plymouth Coupe, supra. The plea of ignorance of illegal operations on the part of the wife is incredible. To believe that the wife was completely innocent under the facts herein stated would require the Court to stultify itself. It is the opinion of this Court that, for the purpose of this proceeding, the 1954 Mercury must be regarded in the same light as though it were titled in the name of the husband.

An order of forfeiture will be entered upon presentation but, with respect to the 1954 Mercury, the same shall not be sold or otherwise disposed of until the Commercial Credit Company shall have a hearing on its contemplated petition.