UNITED STATES of America,
Appellee,

v.

NORTH CAROLINA NATIONAL BANK,
Intervenor, Appellant.

No. 9374.

United States Court of Appeals
Fourth Circuit.

Argued June 11, 1964.

Decided Aug. 19, 1964.

James R. Turner, Greensboro, N. C. (Beverly C. Moore, Greensboro, N. C., on brief), for appellant.

Henry E. Frye, Asst. U. S. Atty. (William H. Murdock, U. S. Atty., on brief), for appellee.

Before SOBELOFF, Chief Judge, BELL, Circuit Judge, and CRAVEN, District Judge.

CRAVEN, District Judge.

Smarting from the forfeiture of its $4,585.68 lien interest in an expensive automobile used in the illicit liquor business, the North Carolina National Bank appeals from the district judge's conclusion of law that he lacked the power under 18 U.S.C.A. § 3617 to remit the forfeiture. We think the district judge construed the facts so as to unnecessarily limit and restrict the grant of authority given by the Congress to relieve an innocent lienholder of the harshness of forfeiture.

William Worth Eaves precipitated the controversy by hauling three gallons of non-taxpaid whiskey in his 1963 Pontiac Bonneville Sports Coupe. He had no prior record of violating the liquor laws. The vehicle was, of course, forfeited to the United States by the express provision of the statute. 18 U.S.C.A. § 3615. Eaves bought the automobile from King-Zane Motors, Inc. in Guilford County, North Carolina, on May 11, 1963. He executed a conditional sales contract to the seller to secure the unpaid balance of the purchase price in the amount of $4,-685.68, and this contract was on the same day duly assigned to the North Carolina National Bank.

The district judge stated in his memorandum opinion: "It is not disputed that the claimant (Bank) acquired the said conditional sales contract in good faith, and that at the time such interest was acquired it had no knowledge or reason to believe that the automobile was being used or would be used in violation of the laws of the United States or of any state relating to liquor."

Under 18 U.S.C.A. § 3617, it is provided that a claimant, such as the Bank in this case, seeking remission or mitigation of the forfeiture, must prove that he (1) acquired his interest in good faith,

(2) had no knowledge or reason to believe that the automobile was being or would be used in the violation of laws of the United States or of any state relating to liquor, and (3) before acquiring his interest was informed, in answer to inquiry at the headquarters of *one* of the designated law enforcement agencies, that the purchaser had no record or reputation for violating laws of the United States or any state relating to liquor. The inquiry must be made in *either* the locality where the right under the contract is acquired *or* the locality in which the purchaser of the vehicle then resided. In this case, Guilford County fits both descriptions.

The only question posed at the trial was whether or not there had been sufficient compliance with the third part of the statute (18 U.S.C.A. § 3617(b) (3)) in making the bootleg hazard investigation.

Although required to make only *one* inquiry, the Bank made inquiry of the Greensboro Police Department *and* the Greensboro Alcoholic Beverage Control Board.[1] With respect to the inquiry made, the Bank employee testified in part as follows:

After being asked what was said in the conversation with Mrs. Williams at the Greensboro Police Department, the witness answered:

"I gave her the man's name, his age, and race, and asked her to check to see if she had any record on him.

"THE COURT: What did she tell you?

"THE WITNESS: She gave me three charges: 11/28/61.

"THE COURT: What?

"THE WITNESS: On 11/28 of '61, capias in Chatham County; and in June of '62 failure to reduce speed, $10.00 plus costs. In December of '62 capias in Chatham County.

"THE COURT: Was that all your conversation?

"THE WITNESS: Yes, sir."

Again the witness was asked if she called the ABC Board and what she asked, and in response thereto said:

"THE WITNESS: I asked them to check their records to see if they had any record—I would assume that's what I asked—on William Worth Eaves.

"THE COURT: And what did that person tell you?

"THE WITNESS: Evidently just no record; that's all I have written down here."

From the foregoing testimony the district judge concluded that the Bank had failed to make the necessary inquiry as to reputation for violating liquor laws. We think this interpretation of the testimony is too narrow. Neither the Greensboro Police Department nor the Greensboro ABC Board had any *official* record of violations of liquor laws. The inquiry was not being made to the official custodian of official records such as a clerk of court. Other evidence clearly establishes that the Bank's inquiry about "records" relates to a card file system kept by the law enforcement officers for their own purposes. In a case involving reputation, the Supreme Court, in a per curiam opinion, said: "In limiting the inquiry duty to any one of several offices, Congress must necessarily have contemplated that the *records* of one office only would be checked." Murdock Acceptance Corp. v. United States, 350 U.S. 488, 76 S.Ct. 536, 538, 100 L.Ed. 580, 584 (1956). (Emphasis ours.)

According to the Captain of the Record Division, there is nothing on the cards except information as to previous violations of the criminal law, and the young ladies in his office are instructed to give out no information as to reputation.

It was plainly established that the Greensboro Police Department, Records Division, never answered the inquiry concerning a person's reputation:

"THE COURT: Well, what if somebody called over there what is

---

1. Eaves had no reputation with either agency of violating the liquor laws.

the policy of those young ladies if somebody calls and says, 'I want to know the record and/or reputation of John Jones'; what would that young lady do?

"THE WITNESS: She would say 'I'll give you the record, not the reputation', because they are not investigative young ladies; they are just clerks and all they can keep is the records.

\* \* \* \*. \* \*

"THE COURT: The girls are instructed not to give out any reputation?

"THE WITNESS: Reputation we do not give out, sir."

Since by definition "reputation" is what people commonly say about a person, that agencies designated for the inquiry say *nothing* is some indication that there is no such general reputation in the community.

With respect to the Greensboro ABC Board, the head of that agency testified, in substance, that inquiries by telephone as to record or reputation were not supposed to have been answered at all and that instructions had been in effect all the time that no such inquiries were to be answered. Despite the stated policy, he testified that he knew that such telephone inquiries were made and also testified:

"QUESTION: In other words, *no matter what the inquiry is*, if it pertains to an investigation, an inquiry in connection with the financing of an automobile, you would give them the record *and* the reputation; would you not?" (Emphasis ours.)

"ANSWER: Yes, sir, if we know it."

The statute does not require that the inquiry be in any particular verbiage. Employees of law enforcement agencies know what the inquiry is about as well as employees of banks. Answers to such questions are not given to curiosity seekers but are only given out for "legitimate reason or cause"—as stated by one of the law enforcement officers. No one would seriously contend that a competent employee of a law enforcement agency, advised that the Bank is about to finance an automobile purchase, would be unaware of the Bank's interest in reputation as well as criminal record.

■ The Bank's employee making inquiry in this case had no independent recollection of the particular transaction and was speaking from her own records. She testified that she made such inquiries fifty to seventy-five times every week. Obviously she was in daily communication with the employees of the law enforcement agencies. It is absurd under such circumstances to say that in each conversation she must use language to convey her inquiry in the form of the statute.

In United States v. One 1936 Model Ford, 307 U.S. 219, 59 S.Ct. 861, 863, 83 L.Ed. 1249, 1260 (1939), the Supreme Court rearranged the difficult wording of subsection (b) (3) to enlighten its meaning. The inquiry requirement was stated in these words: (that) "the claimant \* \* \* was informed in answer to his inquiry \* \* \* as to the *character or financial standing* of such other person, that such other person had no such record or reputation." (Emphasis ours.) Note the inquiry is *not* stated in terms of record or reputation.

■ The bootleg hazard inquiry is plainly just "one aspect of the credit risk". H.R.Rep.No.1601, 74th Cong., 1st Sess. 6 (1935). An inquiry about proposed financing of an automobile is a *credit* inquiry and, if made to one of the specified law enforcement agencies, is sufficient so long as the purpose of the inquiry is disclosed—to guard against the bootleg hazard in extending credit.

■ Implicit in the statute is the assumption of the Congress that law enforcement officers will *answer* the inquiries of financing institutions and advise and inform of the bootleg risk. Where it appears, as here, that such is not the case and that it is the policy of

the law enforcement agencies that a telephone inquiry as to reputation will not be answered, we hold that the inquirer is relieved of the statutory duty of being informed in answer to his inquiry that there was no reputation for violating the liquor laws. Congress intended only that "a reasonable inquiry concerning the bootleg risk should be made in connection with the investigation of financial responsibility." United States v. One 1936 Model Ford, supra, 59 S.Ct. 869, 83 L.Ed. 1260. If law enforcement agencies find it necessary or expedient in their war against the illicit liquor traffic to adopt policies denying or unduly delaying information with respect to record or reputation, then the requirement of getting the information must fall with the implicit assumption upon which it is required, i. e., that it is available. See: Murdock Acceptance Corp. v. United States, supra. Nothing in the statute or its history [2] suggests that Congress intended to offer a false hope: to require as a condition to remission that which cannot be obtained. On the contrary, it was intended to bar only the lender who was willfully negligent or fraudulent. United States v. One 1936 Model Ford, supra, 59 S.Ct. 861, 83 L.Ed. 1261.

## II.

■ The owner of the Pontiac had no previous convictions for violation of the liquor laws. Did he have a reputation for violating the liquor laws? The burden of proof is on the United States to show that he had such a reputation, and unless such reputation is established, there has been no such default on the part of the Bank as to preclude remission of the forfeiture. The only evidence with respect to reputation was elicited from an Alcohol and Tobacco Tax Unit officer of the Treasury Department who said that he had investigated the reputation of William Worth Eaves in *Chatham* County and that he knew his reputation from back in 1959 until he left Chatham County in the latter part of 1960. Thereafter, the testimony elicited was as follows:

"QUESTION: What was that reputation insofar as whiskey?

"ANSWER: He had a reputation for dealing in nontaxpaid whiskey.

"QUESTION: Did he have that reputation with the Sheriff's Department?

"ANSWER: Yes, sir.

"QUESTION: And with other law enforcement agencies in Pittsboro and Siler?

"ANSWER: In the Pittsboro and Chatham County area."

In United States v. C. I. T. Corporation, 93 F.2d 469, 471 (2d Cir. 1937), the late Judge Learned Hand said that the statute means "reputation in the usual sense, a prevalent or common belief, a general name, the opinion of a number of persons, a more or less extended and public attribution of the crime, likely to be spread about so as to reach the seller." In that case, some of the officials had for long suspected the owner of breaking the liquor law. The Second Circuit held that the knowledge of those charged with the duty of prosecuting the owner and their suspicion did not give him the reputation of doing so.

■ In United States v. One Hudson Coupe, 1938 Model, 110 F.2d 300, 303 (4th Cir. 1940), this court said there is no question concerning the requisite generality of "reputation" as broadly defined, citing United States v. C. I. T. Corporation, supra. Both cases are cited for the proposition that the term reputation means general reputation within the community. See: Annotation: Remission of Forfeiture—Inquiry, 100 L.Ed. 592.

In a per curiam opinion, United States v. Shell, 212 F.2d 789 (4th Cir. 1954), Judge Dobie, who authored United States v. One Hudson Coupe, 1938 Model, supra, participated as a member of the panel with Chief Judge Parker and Judge Soper. In that case, the district judge re-

2. H.R.Rep. No. 1601, 74th Cong., 1st Sess. (1935); S.Rep. No. 1330; S.Comm.Hearings, Vol. 495, No. 4, p. 13 (1935).

mitted the forfeiture in spite of his own finding that the owner of the car did have a reputation among law enforcement officers for violating the liquor laws. The court held that assuming (without deciding) that reputation among officers of the law is sufficient to require the inquiry, "(w)e think it clear that mere suspicion or belief on the part of officers is not sufficient. * * *"

In United States v. One 1950 Model Buick, 137 F.Supp. 643, (M.D.N.C.1955), Judge Hayes of the Middle District of North Carolina remitted forfeiture on the ground that the evidence did not justify a finding that the owner had the reputation of violating the liquor laws. As in the instant case, the only evidence was that of an agent who testified that he had heard one or two ABC officers say they believed the owner was hauling liquor in his car and had been hauling it for three or four months. In his opinion, Judges Hayes noted that in the trial of hundreds of liquor cases he had had occasion to note that local officers, less sufficiently trained than federal officers, will sometimes loosely give a man a reputation for violating the liquor laws. He then held that the reputation was not extensive enough on the facts of the case among officers alone to amount to reputation in a legal sense.

In United States v. One 1940 Buick Four-Door Sedan, 92 F.Supp. 13 (W.D. N.C.1950), despite testimony of the Sheriff that the owner had the reputation of picking up a man and taking him to get a pint of liquor, the court held that two isolated instances of law violation and the above-quoted testimony did not measure up so as to constitute a general reputation, and remission of forfeiture was allowed.

■ Although it is unnecessary to decide, we think it not inappropriate to express doubt that the flat assertion by the A.T.U. officer that William Worth Eaves had a reputation with the Sheriff's Department and other unnamed law enforcement agencies in Pittsboro and Chatham County is itself sufficient to support a finding of general reputation for violating the liquor laws. In federal courts, there must be more than a scintilla; there must be substantial evidence. Beaty Shopping Center, Inc. v. Monarch Insurance Company of Ohio, 315 F.2d 467 (4th Cir. 1963).

### III.

■ If it be assumed that general reputation for violating the liquor laws had been established, the statute imposes no duty upon the Bank to make inquiry in Chatham County. For two years William Worth Eaves had lived in Guilford County, and it was his place of residence. The financial transaction and the purchase of the automobile likewise occurred in Guilford County. The Bank made no inquiry as to character or financial standing of Eaves in Chatham County. By the plain terms of the statute, the Bank's only duty was to make inquiry of *one* of the appropriate headquarters of the law enforcement agencies in Guilford County. In response to one of its inquiries, the Bank learned of a traffic violation and capiases issued for Eaves from Chatham County. Such knowledge imposed no duty upon it to inquire in Chatham County as to his record or reputation with respect to liquor law violations.

■ An innocent claimant need not inquire concerning "something unknown and of which he had no suspicion." United States v. One 1936 Model Ford, supra, 59 S.Ct. 870, 83 L.Ed. 1260.

### IV.

■ The Government earnestly contends that even if this be a case for the exercise of the district court's discretion in remission or mitigation for forfeiture, that such discretion ought not to be exercised in favor of the Bank. We do not think the facts support such a contention. Certainly the district court's conclusions that the Bank acquired its interest in good faith and had no reason to believe that the automobile would be used in violation of the liquor laws are supported by substantial evidence and are not clearly erroneous. The district judge denied remission as

255

a matter of law, and not in his discretion. It is unnecessary, therefore, to remand for the exercise of the court's discretion. Manufacturers Acceptance Corp. v. United States, 193 F.2d 622 (6th Cir. 1951); United States v. C. I. T. Corp., supra; Kinston Auto Finance Co. v. United States, 182 F.2d 543 (4th Cir. 1950.).

Reversed.