UNITED STATES of America,
Libelant,

v.

ONE 1961 FOUR–DOOR CADILLAC
SEDAN, Serial No. 61K082846,
Claimant.

Civ. A. No. AC–1162.

United States District Court
E. D. South Carolina,
Columbia Division.

Dec. 21, 1964.

Terrell L. Glenn, Dist. Atty., Columbia, S. C., for libelant.

M. M. Levy, Bishopville, S. C., E. McLeod Singletary, Columbia, S. C., for claimant.

SIMONS, District Judge.

Subject automobile was seized pursuant to Libel of Information and Order that Monition and Attachment issue filed on June 4, 1963, pursuant to Sections 7301 and 7302 of the Internal Revenue Code of 1954, as amended. The Libel alleged that subject automobile was used

on April 28, 1963 by one H. Samuel Skinner, in Lee County, South Carolina, in violation of the Internal Revenue laws of the United States in the transportation, deposit and concealment of three gallons of distilled spirits without the necessary tax affixed thereto with intent to defraud the United States; that said vehicle was registered for the year 1963 in the name of Elsie Skinner of Florence, South Carolina; that at the time of the seizure said vehicle had an appraised value of $2500. The Monition commanded the Marshal to seize subject vehicle and keep the same in his custody pending further order of the court and to give due notice to all interested persons according to law to interpose any claim they may have to such vehicle.

In her Answer and Return to Libel claimant, Mrs. Skinner admitted the formal allegations of the Libel, but specifically denied that at the time said vehicle was seized it was being used in violation of the Internal Revenue laws of the United States; further, that in the event it was determined that such automobile was being used in violation of such laws, said use was without her permission or consent and she asked that the Libel and Monition be dismissed and that subject vehicle be delivered to her. Upon petition of claimant the court, on June 13, 1963, ordered that subject vehicle be released upon the posting of a sufficient bond in the amount of $2500.[1] Proper bond with sufficient surety approved by the court was filed with the Clerk on June 13, 1963 and subject automobile was delivered to claimant.

Trial by the court without a jury was had in Columbia, South Carolina, on November 30, 1964. The two issues to be determined by the court framed by the pleadings and developed by the testimony at the trial are as follows: 1) Whether subject automobile should be forfeited to libelant because of its illegal use in violating the Internal Revenue Laws, and 2) if forfeiture is ordered by the court, is claimant entitled to a remission of forfeiture upon her plea that she was the legal owner of subject vehicle and that if the same were used for any illegal purpose, which she specifically denied, it was used upon said occasion and manner by her husband without her permission or knowledge.

The testimony of witnesses for libelant and that of witnesses for claimant are in direct conflict as to the alleged illegal use of subject vehicle on said occasion.

Libelant's key witness, Roy E. Mayes, was an agent of the ATU Division of the Internal Revenue Service on April 28, 1963, and is now employed by the Leon County Sheriff's office at Tallahassee, Florida. He testified that pursuant to certain information received by the ATU that H. S. Skinner, husband of claimant Elsie Skinner, was to deliver non-tax paid whiskey on the morning of April 28, 1963, he and Robert Chapman, ATU officer in charge of the Sumter office, went to the Manville Section of Lee County, South Carolina, at approximately 5:30 a. m. to a store known as "Bramlett's Grocery." The store was an old school building located in the middle of a clearing approximately seventy feet from the road and surrounded by a wooded area. After surveying the area to determine that there was no liquor in sight around or under the building or on the porch, Mayes concealed himself in the wooded area to the right of the building facing from the road and remained there until approximately 6:00 a. m. when he heard a vehicle coming down the road. As the car approached a house before reaching

---

[1]. The conditions of the bond "are such that if the said Elsie Skinner, owner of said vehicle above identified, shall return said vehicle in case it be adjudged by the court at the time of the trial of the above matter and pay the difference between the appraised value of the said vehicle as of the time it is released to the petitioner-claimant and the appraised value as of the time of trial, then the above obligation shall be void and of no effect; but if said vehicle be not returned at the time of the trial, if it be so adjudged, this bond shall stand in lieu of and be forfeited in the same manner as such vehicle. * * *" from Order of Judge Martin.

the store he heard the horn blow three times with two blasts each time. The car then came on down the road without stopping and pulled into the parking area about fifty feet from the front of the store directly in front of and just a few feet from the wooded area in which Mayes concealed himself, with the front end of the automobile headed directly towards him. Mayes was only fifteen or twenty feet from the car at that time. He saw Mr. Skinner get out of the driver's side of the car and approach the rear of the vehicle. At that time he saw a young Negro boy he later identified as Willie James Bowman, come to the car from the house in front of which Mr. Skinner had blown the horn. Mayes then moved back into the woods about thirty feet from the car to better conceal himself. When the colored boy arrived at the rear of the automobile where Mr. Skinner had gone, Mayes heard the truck lid open and close; shortly thereafter the colored boy came into the wooded area and sat down a pasteboard box containing six half gallons of non-tax paid liquor, directly beside Mayes. Officer Mayes testified that since the front of the car was directly in front of him he could not see the rear of the car; that the colored boy came from the direction of the rear of the automobile. He further testified that at all times he was where he could clearly see the building, and that neither Skinner nor the colored boy had been to, or in, the building prior to the time that the whiskey was brought into the woods and placed beside him. He contacted officer Chapman on the walkie-talkie and asked him to come to the scene immediately.[2] By the time Mayes left his hiding place and reached the store Chapman had taken Mr. Skinner into custody. At that time Skinner stated that the whiskey had come from inside the store; and Bowman told the officers he had gotten the whiskey from the porch of the store. Both Skinner and Bowman denied that the illegal whiskey had been transported in subject

automobile. No search of the store building was made for other whiskey. Mr. Bramlett who operated the store and lived in one of the adjoining rooms in the building was just getting out of bed when the officers arrived inside the store. It is noted that Mr. Bramlett died some time ago and was therefore not available as a witness for either side.

The court was very much impressed with Mr. Mayes' testimony, his straight forward and frank answers to questions on direct and cross examination, and his demeanor upon the witness stand.

Both Heyward S. Skinner, husband of claimant, and Willie James Bowman testified in behalf of claimant. Claimant herself was too ill to come to court, requiring that her deposition be read into the record. Skinner and Bowman testified that Skinner was in the bootleg liquor business; that he kept a supply of illegal whiskey in the store building for sale to his customers; that he employed Bowman, who was attending school, to work for him on Friday afternoons, Saturdays and Sundays to move the whiskey out of the store into the woods early in the morning and back into the store for safe keeping at night; that as customers came to the store to purchase the whiskey, Bowman, while he was on duty, would go into the woods and bring the desired quantity of the liquor into the store where Mr. Skinner would dispense it to his customers. They both testified that upon the occasion in question there were several pasteboard cartons of the illegal whiskey located in one of the side rooms of the store, and that Bowman had only been able to move out the first carton when the officers accosted them. Since the officers did not search the balance of the building this fact could not be substantiated or denied by them. Skinner and Bowman also testified that the whiskey had not been transported that day in subject vehicle, and both denied that they had removed the whiskey from the trunk of the car, further stating that the trunk had not been opened

2. Chapman had left Mayes at the store and gone down the highway to await a call on the walkie-talkie.

and closed that morning as had been testified to by Mayes.

■ ■ The court puts absolutely no weight in the testimony of Heyward S. Skinner, an admitted bootlegger of long standing who has prior convictions to his credit. Although the direct testimony of Willie James Bowman, an intelligent fifteen year old Negro, could not be appreciably shaken on cross examination, from all the testimony and circumstances, presented I am completely convinced that Skinner brought the illegal whiskey to the scene that morning in subject automobile; and consequently I find and conclude that said car should be, and it is hereby ordered forfeited to libelant.

Thus the court must now consider whether such forfeiture should be remitted in favor of claimant.

The guidelines governing the court in determining the rights of claimant are set forth in Section 3617 of Title 18 U.S.C.A., which provides in part as follows:

"[a] [J]urisdiction of court. Whenever, in any proceeding in court for the forfeiture, under the internal-revenue laws, of any vehicle or aircraft seized for a violation of the internal-revenue laws relating to liquors, such forfeiture is decreed, the court shall have exclusive jurisdiction to remit or mitigate the forfeiture.

"[b] Conditions precedent to remission or mitigation. In any such proceeding the court shall not allow the claim of any claimant for remission or mitigation unless and until he proves [1] that he has an interest in such vehicle or aircraft, as owner or otherwise, which he acquired in good faith, [2] that he had at no time any knowledge or reason to believe that it was being or would be used in the violation of laws of the United States or of any State relating to liquor, and [3] * * *."

■ In determining the question in the case at bar we are only concerned with the two conditions precedent set forth in Sections [b] [1] and [b] [2] above. While the burden of proof rests upon the government to establish its right to forfeiture, once the forfeiture of the vehicle is determined, then the burden of proof shifts to the claimant to clearly establish that the conditions precedent required by Section 3617[b], supra, have been met. United States v. Dodd, 205 F.2d 260 [5th Cir.]; United States v. Ford Truck, 115 F.2d 864 [3rd Cir.]; United States v. C. I. T. Corp., 93 F.2d 469 [2nd Cir.].

Has claimant sufficiently met the condition that she "has an interest in such vehicle. * * * as owner or otherwise which [s]he acquired in good faith?" The testimony is undisputed that subject automobile was registered in her name, having been purchased by her husband for cash and the trade-in of an older model Cadillac automobile which was also registered in her name; he then "gave" her the car and paid all insurance costs. Mr. Skinner further testified that a 1954 Chevrolet automobile which he owned was also registered in his wife's name. Undoubtedly subject automobile was acquired and maintained by the husband for the joint use of his wife and himself as the family automobile. The evidence substantiates that he used this car on other occasions, in fact the ATU officers had once before searched the Cadillac for bootleg liquor while in possession of Mr. Skinner. When questioned concerning the registration of both the Cadillac and the 1954 Chevrolet in his wife's name, Mr. Skinner stated that it was easier to get insurance in her name than in his, leaving the clear inference that the registration of both automobiles was placed in his wife's name for convenience sake and probably in an attempt to forestall a forfeiture of the cars under the Internal Revenue laws since he himself had a record and reputation for long time dealing in bootleg liquor.

■ Although the court has serious doubts as to whether claimant acquired her title or interest in subject automobile in good faith, the determination of this particular question becomes academic or

moot in view of the court's conclusion as to whether or not claimant "had at any time any knowledge or reason to believe that it [subject automobile] was being or would be used in the violation of laws of the United States or of any state relating to liquor".

■■ The courts have uniformly held that claimant has the burden of proof to establish that he has not been negligent in permitting others to use his automobile and that in good conscience he should be relieved of the forfeiture. United States v. One 1936 Model Ford Coach, 307 U.S. 219, 59 S.Ct. 861, 83 L.Ed. 1249. Where a wife owns an automobile and she should reasonably know or suspect that her husband is in bootleg liquor business, it is her duty to refuse her husband permission to use her automobile in connection with the conduct of such illegal business. United States v. One 1941 Two Ton Truck, 95 F.Supp. 214, [W.D.Mo., 1951]; United States v. One 1960 Ford Convertible, 209 F.Supp. 247, [D.C.Miss., 1962]. Judge Chestnut, in refusing to remit the forfeiture of an automobile owned by a daughter whose father, with whom she and her husband lived, had used said car in violation of the liquor law stated:

"Under all the circumstances of the case I conclude that it would be entirely too liberal an application of this recent statute to relieve against the forfeiture in this case. It would tend to promote evasions of the consequences of activity in violating the internal revenue laws and encourage prospective violators to have automobiles registered in the name of some other member of the family but to use them at will for illegal purposes." United States v. One Plymouth Coupe, 14 F.Supp. 610, 612 [D.C.Md., 1936].

Likewise Judge Hoffman, in United States v. One 1954 Mercury 2-Door Sedan, 128 F.Supp. 891, 895 [D.C.E.D.Va. 1955], had this to say about an automobile owned by wife and illegally used by husband:

"The mere fact that this vehicle is titled in her name affords no protection. She did not use her own funds to make the purchase. This Court has previously passed upon this question in U. S. v. One Ferguson Farm Tractor, D.C., 125 F.Supp. 580. To the same effect see: U. S. v. One 1937 Ford Truck, D.C., 29 F.Supp. 278; U. S. v. One 1941 Ford 2 Ton Truck, D.C., 95 F.Supp. 214; and U. S. v. One Plymouth Coupe [D.C., 14 F.Supp. 610], supra. The plea of ignorance of illegal operations on the part of the wife is incredible. To believe that the wife was completely innocent under the facts herein stated would require the Court to stultify itself. It is the opinion of this Court that, for the purpose of this proceeding, the 1954 Mercury must be regarded in the same light as though it were titled in the name of the husband."

In the case of United States v. One Ferguson Farm Tractor, 125 F.Supp. 580, [D.C.E.D.Va., 1954], where subject tractor was owned by wife and used by husband in bootleg liquor business, the court said:

"He was permitted to use the tractor, or direct its use by others, as he determined. It is the opinion of this Court that the remission or mitigation statute was enacted by Congress to protect the innocent who are diligent in their efforts with respect to inquiry or knowledge. It was never designed for the purpose of permitting law violators to title vehicles in the names of members of their families whose criminal records may be clear. * * * In permitting her husband to use the farm equipment as he determined, the wife has assumed the risks incident to the unlawful use under the peculiar facts of the case.

"Bearing in mind the close relationship between the parties, the petition for remission or mitigation is denied and an order of condemnation will be entered upon presentation."

In reaching a decision in this case the court is mindful of the liberal construction against forfeiture and in favor of claimant for remission of forfeiture in the construction of Section 3617 of Title 18, supra, inasmuch as forfeiture is a drastic remedy and is not favored by the courts.[3]

However, under the facts and circumstances of this case the court must conclude that claimant has totally failed to carry her burden of proof in establishing that she had no knowledge or reason to believe that her husband was using or would use her automobile in violation of the Internal Revenue laws. She and her husband own no property other than the Cadillac and the 1954 Chevrolet. She had no income and her husband admittedly had an income of approximately $25.00 a week from the little grocery store which he operated. Unquestionably, the husband had been in the bootleg liquor business for many years and in her deposition claimant readily admitted that she knew of his record conviction in State Court in 1962 which resulted in his paying a $750 fine for possession of illegal whiskey. Besides her knowledge of this conviction, there were other facts and circumstances which should reasonably have indicated to her that Mr. Skinner was engaged in the illegal liquor business. He apparently left their home early in the mornings and returned late at night. He had large sums of cash money available since he paid cash for the automobile in spite of his meager legitimate weekly income; and in fact, he had $1200 in cash on his person when arrested by the officers on this occasion. It is a fair inference that a substantial part of their living costs came from the husband's bootleg business. I can only believe that claimant knew of and impliedly consented to the illegal use of her automobile by her husband on such occasion. Consequently, claimant is not such an innocent owner of subject motor vehicle as to equitably entitle her to a remission of its forfeiture.

It is therefore ordered that the claimant's petition for remission of said forfeiture be and the same is hereby denied.

---

3. United States v. One 1940 Buick 4-Door Sedan, 92 F.Supp. 13 [D.C.N.C.1950]; United States v. One 1946 Mercury Sedan Automobile, 100 F.Supp. 957, [D.C. Ga., 1951], affirmed United States v. Frank Graham Co., 5 Cir., 199 F.2d 499. United States v. One 1955 Buick 4-Door Sedan Automobile, 241 F.2d 90 [4th Cir.. 1957]; United States v. One 1936 Model Ford Coach, 307 U.S. 219, 59 S.Ct. 861, 83 L.Ed. 1249. Kinston Auto Finance Co. v. United States, 182 F.2d 543, [4th Cir., 1950].