**UNITED STATES, Plaintiff,**

v.

**ONE 1975 PONTIAC LEMANS,
Defendant.**

Civ. A. No. 76–1718–C.

United States District Court,
D. Massachusetts.

May 25, 1979.

John R. Tarrant, Boston, Mass., for plaintiff.

Owen Gallagher, Roslindale, Mass., for Irma Zullo.

## MEMORANDUM

CAFFREY, Chief Judge.

This is a civil action which came before the court on the prayer of the United States for the forfeiture of a 1975 Pontiac Lemans two-door sedan, Massachusetts Registration 4T–6319 with the Vehicle Identification No. 2F37M5G101227 and on the claim of Irma Zullo, the registered owner of said vehicle.

The matter was submitted to the court for decision on the basis of a stipulation of facts filed by the parties. No evidentiary hearing or oral argument was had. The following facts have been stipulated by counsel for the parties:

1. From early June, 1975, through January, 1976, Thomas J. Connelly, Special Agent, Bureau of Alcohol, Tobacco and Firearms, Department of the Treasury, was assigned to participate in the investigation of violations of the wagering laws in the Chelsea, Massachusetts area.

2. During the period of time set forth in paragraph one, Agent Connelly worked in an undercover capacity.

3. On June 18, 1975, at approximately 12:00 noon, Agent Connelly observed Charles Zullo, known to him also as Jerry Zullo, enter Dorothy's Cafe, Cross Street, Chelsea, and ask Mary, the barmaid, if she had any "action" for him. Mary handed Zullo a number of slips of paper. A male customer also placed a numbers wager with Zullo which he recorded on a slip of paper after receiving the customer's money.

4. On June 25, 1975, at approximately 5:30 p. m., Agent Connelly observed Zullo pay Mary, the barmaid at Dorothy's Cafe, her winnings on a wager previously placed and accept wagers on dog races from several other patrons.

5. On July 23, 1975, at approximately 5:00 p. m., Agent Connelly placed two wagers with Zullo on the double at Wonderland Dog Track while in Dorothy's Cafe, Chelsea, Massachusetts. Zullo recorded the bets on a 3″ × 5″ white pad.

6. On July 24, 1975, at approximately 5:45 p. m., while in Dorothy's Cafe in Chelsea, Zullo paid Agent Connelly his winnings on a wager placed the previous day. Thereafter, Agent Connelly placed four other wagers with Zullo.

7. On July 25, 1975, at approximately 6:50 p. m., while at Dorothy's Cafe in Chelsea, Zullo paid Agent Connelly his winnings on a wager placed the previous day. Thereafter, Agent Connelly placed five other wagers with Zullo.

8. On August 14, 1975, at approximately 5:30 p. m., while at Dorothy's Cafe in Chelsea, Agent Connelly placed five wagers with Zullo which he recorded on a 3″ × 5″ pad. Thereafter, Agent Connelly asked Zullo if he handled numbers, to which Zullo replied, "Sure." Zullo said he paid 700 to 1, but wanted 10% on a bet. Agent Connelly placed a bet on number 713. During the conversation that followed, Zullo told Agent Connelly that he has "been in the booking business for forty years."

9. On August 21, 1975, at approximately 6:30 p. m., Agent Connelly placed five wagers with Zullo who was seated in a 1973 Chevrolet Monte Carlo, red with white top, bearing Massachusetts registration 4T6319.

10. On September 4, 1975, at approximately 6:30 p. m., Agent Connelly placed five wagers with Zullo at Dorothy's Cafe, Chelsea.

11. On September 12, 1975, at approximately 7:00 p. m., while at Dorothy's Cafe, Chelsea, Zullo told Agent Connelly that the Chevrolet Monte Carlo he drives was bought for him by his son and that he keeps the car in his wife's name so the cops can't take it.

12. On October 14, 1975, at approximately 5:30 p. m., Agent Connelly placed two wagers with Zullo at the Men's Tavern, Broadway Street, Chelsea, Massachusetts. At that time, Zullo told Agent Connelly that he traded his Chevrolet in for a 1975 Pontiac Grand Am.

13. On October 23, 1975, at approximately 1:05 p. m., Agent Connelly placed ten wagers with Zullo in front of the Nu-Brite Spot, Everett Avenue, Chelsea, Massachusetts. After recording the wagers on a pad of paper and receiving payment, Zullo entered a 1975 Pontiac Grand Am, white with red top, Massachusetts registration 4T6319, and drove off.

14. On November 6, 1975, at approximately 1:00 p. m., Agent Connelly observed Zullo pick up wagers at Cutler's Cafe in Chelsea, Massachusetts, depart the cafe, enter a 1975 Pontiac Grand Am, white with red top, Massachusetts registration 4T6319, and drive off.

15. On December 2, 1975, at approximately 1:05 p. m., Agent Connelly placed five wagers with Zullo, who was seated in a 1975 Pontiac Grand Am, white with red top, Massachusetts registration 4T6319. After recording the wagers on a pad of paper and receiving payment, Zullo drove off.

16. On January 30, 1976, at approximately 11:15 a. m., Agent Connelly met Zullo at Dorothy's Cafe, Chelsea, and informed Zullo that he (Connelly) wanted to bet. Zullo placed Connelly in telephonic contact with a bookmaking office. After communicating his bets to the office, Connelly was told to pay Zullo, which he did. After placing the money in his pocket, Zullo departed Dorothy's Cafe and entered Cutler's Cafe down the street. Shortly thereafter Agent Connelly observed Zullo exit Cutler's Cafe counting money, enter a 1975 Pontiac Grand Am, white with red top, Massachusetts registration 4T6319, and drive off.

17. No wagering tax stamp under Section 4411 I.R.C. 26 U.S.C. 4411, was ever applied for or purchased by either the claimant, Irma Zullo, or Charles Zullo, in his own name or the name Jerry Zullo.

18. On February 5, 1976, Agent Connelly advised Special Agent Joseph V. Leone, Bureau of Alcohol, Tobacco and Firearms,

that Zullo used a 1975 Pontiac Lemans, white with red top, Massachusetts registration 4T6319, on October 23, 1975, and November 6, 1975, to transport wagering paraphernalia and related money, and on December 2, 1975, Zullo accepted a wager while in the subject automobile.

19. On February 5, 1976, Magistrate Princi issued a search warrant to search the person of Jerry J. Zullo a/k/a Charles Zullo, for "gambling records and wagering paraphernalia . . . ."

20. On February 6, 1976, the aforesaid warrant was served on Jerry J. Zullo a/k/a Charles Zullo, and his person was searched for the materials specified in the warrant.

21. On February 6, 1976, the 1975 Pontiac Lemans, white with red top, Massachusetts registration 4T6319, V.I.N. # 2F37M5G101227, was seized without a warrant at the corner of Pearl and Essex Streets, Chelsea, Massachusetts, a public way, by Agent Leone, a delegate of the Secretary of the Treasury, acting pursuant to Sections 7302 and 7321 of the Internal Revenue Code, 26 U.S.C. §§ 7302 and 7321.

22. Said vehicle, 1975 Pontiac Lemans, V.I.N. # 2F37M5G101227, is registered to Irma Zullo, 4 Mead Street, Everett, Massachusetts, who at all times material, was married to Charles Zullo as evidenced by Attachment "A" which is incorporated herein by reference.

23. Irma Zullo denies any knowledge that Charles Zullo allegedly used said automobile for purposes of facilitating his business of accepting bets and wagers to transport betting slips on said dates.

■ On the basis of the stipulation, I find that Jerry Zullo was engaged in the business of accepting bets and wagers in the City of Chelsea, Massachusetts during the period from June 18, 1975 to January 30, 1976. I rule that while so engaged he was required to pay the taxes provided for by 26 U.S.C.A. §§ 4401 and 4411 and I find that he failed to pay those taxes. I further find that while so engaged in this illegal business he used the 1975 Pontiac Lemans in carrying out the illegal business and spe-

cifically, I find that he used the Pontiac to transport both gambling records and United States currency involved in that business.

I find that Special Agent Joseph V. Leone of the Bureau of Alcohol, Tobacco and Firearms of the United States Treasury at all times pertinent hereto was a duly authorized delegate of the Secretary of the Treasury acting pursuant to the provisions of 26 U.S.C.A. §§ 7302 and 7321. I rule that because the 1975 Pontiac Lemans was used in furtherance of an illegal business that it was subject to seizure without a warrant. I further rule that the vehicle, because of that use was legally seized by a duly authorized federal officer while it was located on a public way where it had been observed by federal law enforcement officers while being so used.

■ I note that the burden of proof which must be sustained by the United States to validate such a seizure under 26 U.S.C.A. § 7302 is to prove by a preponderance of the evidence that the vehicle in question had been intentionally used as an "active aid" in violating the Internal Revenue laws. *United States v. One 1968 Ford LTD*, 425 F.2d 1084 (5th Cir. 1970). I find that Jerry Zullo intentionally used this car as an "active aid" to facilitate his wagering business.

■ Claimant, Irma Zullo, denies knowledge of her husband's illegal activities. However, I rule that her knowledge or lack of knowledge of her husband's use of the vehicle for illegal purposes is immaterial. In so ruling, I have in mind the observations of the Supreme Court of the United States in *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663 at 680, 94 S.Ct. 2080 at 2090, 40 L.Ed.2d 452 (1973). " . . . a long line of prior decisions of this court established the principle that statutory forfeiture schemes are not rendered unconstitutional because of their applicability to the property interests of innocents . . . ." In that same opinion, the Supreme Court also noted (at p. 690, 94 S.Ct. at 2095) that "no allegation has been made or proof offered that the [claimant] did all that it reasonably could to avoid

having its property put to an unlawful use . . . ." Similarly, no such allegation is made by the claimant herein. *See, also, General Motors Acceptance Corp. v. United States,* 286 U.S. 49, 57–58, 52 S.Ct. 468, 76 L.Ed. 971 (1932); *Goldsmith-Grant Co. v. United States,* 254 U.S. 505, 510–11, 41 S.Ct. 189, 65 L.Ed. 376 (1921); *Dobbin's Distillery v. United States,* 96 U.S. 395, 401–02, 24 L.Ed. 637 (1878).

Lastly, it should be noted that the Court of Appeals for this circuit sustained the validity of the seizure of an automobile used in violation of the Internal Revenue laws without the use of a warrant in *Interbartolo v. United States,* 303 F.2d 34 (1st Cir. 1962). The court stated (at p. 38):

> [t]he overwhelming weight of authority in the circuits holds that a warrant is unnecessary in the enforcement of an action for forfeiture. See, e. g., *United States v. Carey,* 272 F.2d 492, 494 (5 Cir. 1959); *United States v. One 1956 Ford Tudor Sedan,* 253 F.2d 725, 727 (4 Cir. 1958); *Sanders v. United States,* 201 F.2d 158, 159 (5 Cir. 1953); *United States v. Pacific Finance Corp.,* 110 F.2d 732, 733 (2 Cir. 1940); *United States v. Eight Boxes Containing Various Articles,* 105 F.2d 896 (2 Cir. 1939); *Two Certain Ford Coupe Automobiles v. United States,* 53 F.2d 187 (5 Cir. 1931).

In *Carey, supra,* the Court of Appeals for the Fifth Circuit ruled (at p. 494) that:

> The seizure of property, the title to which has been forfeited to the United States, is to be distinguished from the exclusion of evidence secured through an unlawful search and seizure. In the one case the Government is entitled to the possession of the property, in the other it is not.

Accordingly, since the right to possession of this Pontiac by the Government stemmed from the forfeiture statute and not from the issuance of a valid warrant, an order will enter denying the claimants claim and ordering forfeiture.