**UNITED STATES of America,
Plaintiff, Appellee,**

v.

**ONE 1975 PONTIAC LEMANS, VEHICLE I.D. NO. 2F37M56101227,
Defendant, Appellee.**

**Appeal of Irma ZULLO, Defendant.**

**No. 79–1275.**

United States Court of Appeals,
First Circuit.

Argued Oct. 1, 1979.
Decided May 9, 1980.

John F. Toomey, Jr., Boston, Mass., with whom Owen Gallagher and Gallagher & Gallagher, Boston, Mass., were on brief, for defendant.

John R. Tarrant, III, Sp. Atty. U. S. Dept. of Justice, Washington, D.C., with whom Edward F. Harrington, U. S. Atty. and Jeremiah T. O'Sullivan, Sp. Atty., U. S. Dept. of Justice, Boston, Mass., were on brief, for plaintiff-appellee.

Before COFFIN, Chief Judge, CAMP-BELL, Circuit Judge, and BONSAL,* Senior District Judge.

LEVIN H. CAMPBELL, Circuit Judge.

The United States instituted an action *in rem* in the district court, 470 F.Supp. 1243, seeking the forfeiture of claimant Irma Zullo's automobile under the provisions of 26 U.S.C. § 7302. The district court, finding that the car had been used in violation of the internal revenue laws and had been properly seized, without a warrant, by agents of the Treasury Department, denied Zullo's claim for return of the car and ordered that it be forfeit to the government. On appeal, Zullo argues that: (1) the car was not subject to forfeiture because there was no finding of claimant Zullo's intent to violate the internal revenue laws, (2) the statute under which the seizure was effected requires a warrant for such seizures, (3) the agent who seized the car lacked probable cause to believe it had been used in violation of the internal revenue laws, and

(4) the warrantless seizure of the car was not justified by exigent circumstances.

The district court tried this action on facts stipulated by the parties, which may be summarized as follows. From early June 1975 through January 1976, Thomas J. Connelly, Special Agent of the Bureau of Alcohol, Tobacco and Firearms, worked undercover investigating violations of the wagering laws in the Chelsea, Massachusetts area. During this period, Connelly observed Charles Zullo, claimant's husband, collecting wagering slips and money from a barmaid in the Chelsea restaurant, placed wagers with and collected winnings from Zullo, and carried on a conversation with Zullo in which he told Connelly that he had "been in the booking business for forty years." On October 14, 1975, Zullo told Connelly that he had traded his old car for a 1975 Pontiac Lemans Grand Am. On several occasions thereafter, Connelly either placed bets with Zullo while he was seated in the 1975 Pontiac or observed Zullo using the Pontiac to drive away from one of his betting transactions with wagers and wagering records in his possession.

On February 5, 1976, Connelly advised Special Agent Joseph V. Leone of the Bureau of Alcohol, Tobacco and Firearms that Zullo had used a 1975 Pontiac Lemans, white with red top, Massachusetts registration 4T6319 ("the Pontiac"), on October 23 and November 6, 1975, to transport wagering paraphernalia and related money, and that on December 2, 1975, Zullo had accepted a wager while sitting in the car. On February 5, 1976 a federal magistrate issued a warrant to search the person of Charles Zullo for "gambling records and wagering paraphernalia," and on February 6, 1976, the warrant was executed. Also on February 6, 1976, Agent Leone, acting pursuant to sections 7302 and 7321 of the Internal Revenue Code, 26 U.S.C. §§ 7302, 7321,[1]

---

* Of the Southern District of New York, sitting by designation.

1. "§ 7302. Property used in violation of internal revenue laws

"It shall be unlawful to have or possess any property intended for use in violating the provisions of the internal revenue laws, or regulations prescribed under such laws, or which has been so used, and no property rights shall exist in any such property. A

seized the Pontiac without a warrant from a public street in Chelsea, Massachusetts. The Pontiac is registered to the claimant, Irma Zullo, who denies any knowledge of the car's use in connection with illegal gambling.

### I.

 Claimant urges us to hold that since the district court made no findings that she had intentionally used the Pontiac in violation of the internal revenue laws, the government was not entitled to forfeiture under section 7302. This argument runs counter to the common law theory of forfeiture. *See Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 680–84, 94 S.Ct. 2080, 2090–92, 40 L.Ed.2d 452 (1974). The central concept has been that property subject to forfeiture is, in effect, "guilty" and hence deserving of confiscation.[2] *United States v. United States Coin & Currency,* 401 U.S. 715, 719–20, 91 S.Ct. 1041, 1043–44, 28 L.Ed.2d 434 (1971). Courts applying the various federal forfeiture statutes[3] have "almost uniformly" rejected innocence of the property's owner as a defense to a government forfeiture action. *Calero-Toledo, supra,* 416 U.S. at 683, 94 S.Ct. at 2091; *see, e. g., Van Oster v. Kansas,* 272 U.S. 465, 467, 47 S.Ct. 133, 134, 71 L.Ed. 354 (1926); *United States v. $6,700,* 615 F.2d 1 (1st Cir. 1980).

Section 7302 has been applied in light of this traditional view of forfeiture. In *In-* *terbartolo v. United States,* 303 F.2d 34, 37 (1st Cir. 1962), we stated that "the thrust of Section 7302 is directed not at the individual but at property utilized to violate the pertinent revenue laws." More recently, the Fifth Circuit has held that the only requisite intent in a section 7302 forfeiture action is that "the property in question had been intentionally used [by someone] as an 'active aid' in the violation of the internal revenue laws." *United States v. One 1968 Ford Ltd.,* 425 F.2d 1084, 1085 (5th Cir. 1970). Here the evidence indicates that claimant's Pontiac had been intentionally used by her husband as an "active aid" to an illegal bookmaking operation.

 It is true that in *United States v. United States Coin & Currency,* 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434, the Court stated, with reference to 26 U.S.C. §§ 7302, 7321,

"When the forfeiture statutes are viewed in their entirety, it is manifest that they are intended to impose a penalty only upon those who are significantly involved in a criminal enterprise."

*Id.,* 721–22, 91 S.Ct. at 1044. The Court reached this result in light of 26 U.S.C. § 7327 which, it noted, establishes a remission and mitigation procedure that "permits the innocent owner to prove to the Secretary of the Treasury that the 'forfeiture was incurred without willful negligence or without any intention on the part of the petitioner . . . to violate the law

---

search warrant may issue as provided in chapter 205 of title 18 of the United States Code and the Federal Rules of Criminal Procedure for the seizure of such property. Nothing in this section shall in any manner limit or affect any criminal or forfeiture provision of the internal revenue laws, or of any other law. The seizure and forfeiture of any property under the provisions of this section and the disposition of such property subsequent to seizure and forfeiture, or the disposition of the proceeds from the sale of such property, shall be in accordance with existing laws or those hereafter in existence relating to seizures, forfeitures, and disposition of property or proceeds, for violation of the internal revenue laws."

"§ 7321. Authority to seize property subject to forfeiture

"Any property subject to forfeiture to the United States under any provision of this title may be seized by the Secretary or his delegate."

**2.** This notion of the legal personification of property used in violation of the law has long been the object of criticism. *See* 1 W. Blackstone, *Commentaries,* c. 8, * 300 (seizure of innocent person's property a "superstition" from the "blind days" of feudalism) *quoted in United States v. United States Coin & Currency,* 401 U.S. 715, 720–21, 91 S.Ct. 1041, 1044, 28 L.Ed.2d 434 (1971).

**3.** *E. g.,* 19 U.S.C. § 1595a (property used in connection with illegal importation); 21 U.S.C. § 881 (property used to facilitate violation of narcotics laws); 49 U.S.C. § 782 (property used in connection with counterfeiting).

. . . .' 19 U.S.C. § 1618."[4] *Id.*, 721, 91 S.Ct. 1044. *Coin & Currency*, however, is of no avail to claimant. The possibility that claimant may be able to prevail in an administrative remission proceeding on her contention that her car was used without any intention on her part to violate the internal revenue laws does not entitle her to bypass her administrative remedy and to interpose her contention as a defense to a forfeiture proceeding. *See United States v. One Clipper Bow Ketch Nisku*, 548 F.2d 8, 12 (1st Cir. 1977) (administrative remission procedure is sole mechanism for affording leniency from forfeiture). We do not read *Coin & Currency*, which was addressed to the entirely different question whether a fifth amendment privilege against self-incrimination could be asserted in a forfeiture proceeding, as signalling a departure from the settled rule that a property owner's innocence is generally no defense to a forfeiture action.

■ It may be that forfeiture statutes cannot be constitutionally applied to one who alleges and proves "not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property." *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 689–90, 94 S.Ct. 2080, 2095, 40 L.Ed.2d 452 (1974); *United States v. $6,700*, 615 F.2d 1 (1st Cir. 1980). The district court, applying *Calero-Toledo*, noted that claimant had failed to allege she "did all that [she] reasonably could to avoid having [her] property put to an unlawful use." Claimant alleged only that she did not know of the use of the Pontiac in conjunction with her husband's bookmaking operation, not that she was unaware of his personal involvement in this criminal activity. The stipulated facts suggest that such unawareness is unlikely given her husband's assertion that he had been in the business for forty years. Moreover, claimant's ownership of the Pontiac is not necessarily dispos-

itive even if she were totally oblivious to her husband's actions, since the stipulated record contains statements by Zullo to Agent Connelly that "he" had traded his earlier Chevrolet for the vehicle in question, and that the earlier vehicle, at least, was kept "in his wife's name so the cops can't take it." *See United States v. One 1954 Mercury 2-Door Sedan*, 128 F.Supp. 891, 895 (D.Va.1955). We conclude claimant failed to meet the *Calero-Toledo* standard in both her allegations and proof.

## II.

Claimant also asserts that the government is not entitled to forfeiture because agent Leone's warrantless seizure of the Pontiac violated the provisions of section 7302 stating that "[a] search warrant may issue as provided in chapter 205 of title 18 of the United States Code and the Federal Rules of Criminal Procedure for the seizure of such property. . . ." She argues that since a forfeiture provision such as this is penal in nature, and therefore should be strictly construed, we should read this language as permitting seizures only on authority of a warrant issued on probable cause, "absent applicable exigent circumstances" that would justify a warrantless seizure.

■ Although it is true that forfeiture statutes such as this one are in one sense correctly regarded as penal, *see United States v. United States Coin & Currency*, 401 U.S. at 718, 91 S.Ct. 1041, 1043, 28 L.Ed.2d 434; *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), "[s]tatutes to prevent fraud on the revenue are construed less narrowly, even though a forfeiture results, than penal statutes and others involving forfeitures." *United States v. Ryan*, 284 U.S. 167, 172, 52 S.Ct. 65, 67, 76 L.Ed. 224 (1931); *see United States v. Windle*, 158 F.2d 196, 199 (8th Cir. 1946). Literally, the statute merely permits

---

4. 26 U.S.C. § 7327 incorporates 19 U.S.C. § 1618 as follows:

"The provisions of law applicable to the remission or mitigation by the Secretary or his delegate of forfeitures under the customs laws shall apply to forfeitures incurred or alleged to have been incurred under the internal revenue laws."

the use of a search warrant to effectuate a seizure, and we find nothing in either this specific language or the statutory scheme as a whole that reflects any congressional intent to require a warrant for the execution of section 7302 seizures.[5]

█ Nor are we moved to adopt claimant's reading by any constitutional difficulties that such warrantless seizures might present. It is true that the canons of statutory construction demand that we construe statutes to avoid raising questions of their constitutionality where such a reading is "fairly possible." *NLRB v. The Catholic Bishop of Chicago*, 440 U.S. 490, 499, 506–13, 99 S.Ct. 1313, 1318, 1322–25, 59 L.Ed.2d 53 (1979); *International Association of Machinists v. Street*, 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961). In *Berkowitz v. United States*, 340 F.2d 168 (1st Cir. 1965), however, two members of the panel rejected a narrow construction of section 7302, declining to read the statute "to make it say what to us it quite obviously does not." *Id.* at 173–74 (Aldrich, C. J., concurring). Mindful that our task is one of construction, not amendment of this statute, *NLRB v. The Catholic Bishop of Chicago, supra*, 440 U.S. at 506, 99 S.Ct. at 1322 (Brennan, J., dissenting), we cannot hold that the statute sets up a requirement of a judicially authorized warrant.

### III.

Claimant also argues that the seizure of the Pontiac was unconstitutional because agent Leone did not possess probable cause to believe that the car was subject to forfeiture under 26 U.S.C. § 7302.

█ Claimant concedes that agent Connelly, who had conducted the investigation of Charles Zullo, had sufficient probable cause to seize the Pontiac. But she argues that Connelly did not convey a sufficiently detailed account of his observations to his superiors to provide an adequate basis for any other agent to effect the seizure. In particular, she says that the information on which agent Leone acted was both too stale and too conclusory and imprecise. We do not feel compelled to scrutinize the extent of agent Leone's knowledge, since the cases that have addressed this question have consistently held that the existence of probable cause is to be evaluated on the basis of the collective information of the law enforcement officers engaged in a particular investigation. *See United States v. Ashley*, 569 F.2d 975, 983 (5th Cir.), *cert. denied*, 439 U.S. 853, 99 S.Ct. 163, 58 L.Ed.2d 159 (1978); *White v. United States*, 448 F.2d 250, 254 (8th Cir. 1971), *cert. denied*, 405 U.S. 926, 92 S.Ct. 974, 30 L.Ed.2d 798 (1972); *United States v. Imbruglia*, 397 F.Supp. 1206, 1212 n. 3 (D.Mass.1975), *aff'd*, 564 F.2d 87 (1st Cir. 1977).

### IV.

We turn finally to claimant's argument that warrantless seizure of the vehicle, absent exigent circumstances, violated the fourth amendment. The government responds that it acted under a well-recognized exception to the fourth amendment warrant requirement which allows the seizure of forfeit automobiles without warrant. A panel of this circuit recently upheld such an exception in a case where the seizing officers had probable cause to believe that all the conditions imposing the forfeiture had been met. *United States v. Pappas*, 600 F.2d 300 (D.C.), *vacated for rehearing en banc and decided on other grounds in United States v. Pappas*, 613 F.2d 324 (1st Cir. 1979). *See also Interbartolo v. United States*, 303 F.2d 34 (1st Cir. 1962). The panel declined to read the exception as limited solely to exigent circumstances in which no warrant could be secured in time

---

**5.** The statute here is distinguishable from the forfeiture provision recently addressed in *United States v. Pappas*, 613 F.2d 324 (1st Cir. 1979) (en banc). In *Pappas* the statute in question, 21 U.S.C. § 881(b), set up an express warrant requirement with enumerated exceptions. The court inferred a limitation on the "probable cause" exception to the general warrant requirement, reasoning that a literal reading of the statutory language would have vitiated the general provision. The internal logic of section 7302 does not support such an approach here.

reliably to effect a forfeiture. *Cf. United States v. One 1972 Chevrolet Nova*, 560 F.2d 464, 468 n. 2 (1st Cir. 1977). Under the rationale of the panel decision in *Pappas*, appellant's contentions as to the constitutional necessity for a warrant here would fail.[6]

We adhere to the position taken by the panel in *Pappas*, 600 F.2d 300 for the reasons stated therein which, because they have already been published, we do not now restate in full but rather incorporate by reference as forming a part of this opinion. As the panel emphasized in *Pappas*, seizure of an automobile for forfeiture purposes has long been a recognized exception to the warrant requirement. In his dissent in *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), writing for Justices Douglas, Stewart and Marshall, as well as himself, Justice Brennan referred to the "exception to the warrant requirement . . . which sustains a search in connection with the seizure of an automobile for purposes of forfeiture proceedings." *Id.*, 452, 93 S.Ct. 2533. The circuit courts have generally regarded forfeiture as an established exception. *Pappas*, 600 F.2d at 303. *See also, e. g., United States v. Milham*, 590 F.2d 717, 720 (8th Cir. 1979); *United States v. Capra*, 501 F.2d 267, 280 (2d Cir. 1974), *cert. denied*, 420 U.S. 990, 95 S.Ct. 1424, 43 L.Ed.2d 670 (1975); *United States v. White*, 488 F.2d 563, 564–65 (10th Cir. 1973); *Interbartolo*, 303 F.2d at 38; *contra, United States v. McCormick*, 502 F.2d 281 (9th Cir. 1974). In what is perhaps the leading circuit opinion, Judge Friendly, writing for the Second Circuit in 1967, recognized the difficulty of the issue, as did this court in *Interbartolo*, 303 F.2d at 37–38, but concluded that precedent pointed to treating such seizure as an exception to the warrant requirements. *United States v. Francolino*, 367 F.2d 1013 (2d Cir. 1966), *cert. denied*, 386 U.S. 960, 87 S.Ct. 1020, 18 L.Ed.2d 110 (1967). While arguments can be advanced to distinguish or limit them, the Supreme Court's decisions in *Cooper v. California*, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), and, especially, in *G. M. Leasing Corp. v. United States*, 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977), lend considerable support to the *Francolino* analysis, whereas no Supreme Court authority pertaining specifically to forfeitures points in the other direction.

It would take a bold person to predict in a changing world that even such apparently solid precedent will always remain in place, but we think that changes, if any, should be left to a higher court. The law enforcement process is better served if not undermined by a plethora of diverse opinions around the country. We see no insult to personal liberty, or threat to property, arising from the present state of the law such as would encourage us to embark upon a new direction. We therefore hold that the warrantless seizure, undergirded as it was by probable cause, was constitutional, and that no special exigency was required.

There is a further reason to affirm in the present case. Once property is used in violation of the internal revenue laws, the government is entitled to its possession. *See Boyd v. United States*, 116 U.S. 616, 623, 6 S.Ct. 524, 29 L.Ed. 746 (1886), *quoted in United States v. Zaicek*, 519 F.2d at 412, 414 (2d Cir. 1975), and discussion 519 F.2d at 414. Even if a seizure for forfeiture purposes were not an exception to the fourth amendment warrant requirement, it is not clear why an inadequacy in the process used to secure initial possession would or should defeat the government's ultimate entitlement to the property as established by untainted evidence at a properly conducted forfeiture proceeding. It is one thing to deny the government the use, in a trial, of evidence arrived at as a result of illegal procedures, and another to divest the government of property to which it is enti-

---

**6.** The panel decision in *Pappas* has since been vacated, this court having reheard the case *en banc*; and in the new *en banc* decision, this court redecided *Pappas* on purely statutory grounds that do not bear upon the case at bar. The *en banc* court did not decide whether the constitution would have required a warrant.

tled on the basis of *legally* obtained proof simply because of a purported initial misstep in the government's mode of taking temporary possession.

In *Interbartolo* we indicated that a prior unauthorized seizure of the object did not preclude a valid forfeiture. We do not pass at this time on the continued vitality of *Interbartolo* itself nor do we purport finally to decide the question we last raised; we only observe that it cannot easily be seen how defects in the temporary initial seizure of a forfeitable object would or should carry over in such a way as to prevent its forfeiture in a properly conducted proceeding like that below in which all conditions establishing the government's title have been proven by evidence the genesis of which did not lie in the allegedly illegal seizure.

To be sure, as Chief Judge Coffin points out in his dissent, the concurring opinion in *Berkowitz v. United States*, 340 F.2d 168, 174 (1st Cir. 1965), speaks of not wanting to place a premium upon unconstitutional conduct. *See also Melendez v. Shultz*, 356 F.Supp. 1205 at 1210 (D.C.). But while this approach makes for plausible rhetoric, it falls apart upon analysis. There is simply *no connection here* between the warrantless seizure and the government's later-made case for possession. The latter was not a derivative of the former, as would be true in a typical fourth amendment suppression situation; the government's right to the vehicle "has [not] been come at by exploitation" of the, in the dissent's view, unconstitutional seizure. *See United States v. Crews*, —— U.S. ——, ——, 100 S.Ct. 1244, 1248, 63 L.Ed.2d 537 (1980). No evidence obtained by reason of the supposed illegal seizure is being used to strengthen the case for forfeiture. Our colleague's rule would deprive the government of a vehicle whose forfeit character is fully proven by untainted evidence—simply, it appears, to punish the government for failing to get the warrant to which, as the

outcome of the forfeiture case shows, it would have been entitled all along. (If the claimant wins the forfeiture case, he, of course, gets his car back; our colleague's rule operates only in those cases where the government has independently established its right to seize the car.)

If illegal automobile seizures were a serious social problem, and if other means did not exist for deterring illegal conduct, perhaps such a new twist in the already byzantine law of search and seizure would make sense. As it is, we see little need and no precedent for such a new complexity. Should the police overreach to the extent of seizing an "innocent" vehicle, the victim will regain his vehicle at the forfeiture proceeding, and should he be able to show that the warrantless seizure was effected in bad faith and caused personal damage, he can bring a damages action against the offending officer. Our colleague's proposal to deprive the government of the vehicle in those cases where its right to possession thereof was fully established at the forfeiture proceeding, would be the classic case of punishing the government, and the larger society, for the assumed procedural bumble of the magistrate where a more finely tuned remedy—a damages remedy—exists to accomplish, in a more coherent manner, the objective of achieving deterrence of unconstitutional police conduct.

*Affirmed.*

COFFIN, Chief Judge, dissenting.

I agree with the analysis and conclusions of Parts I–III of the court's opinion. I cannot, however, join in my brothers' conclusion that the Fourth Amendment permits the warrantless seizure of property pursuant to a forfeiture statute in the absence of such exigent circumstances as would prevent law enforcement officers from obtaining a judicially authorized warrant.[1] Contrary to the assertion of the

---

1. To the extent that the court's opinion incorporates the opinion of the panel of this court in *United States v. Pappas*, 600 F.2d 300, *vacated for rehearing en banc*, 613 F.2d 324 (1st Cir. 1979), this dissent addresses the arguments

made in that opinion. For example, Part II addresses the argument, not made in the court's opinion but advanced by the *Pappas* panel, 600 F.2d at 304–05, that the automobile

court's opinion, I do not believe the Supreme Court has either explicitly or implicitly recognized a "forfeiture exception" to the warrant requirement, nor do I believe that the rationale of the "automobile exception" can be stretched to include the type of seizure executed in this case.

### I.

The court cites numerous decisions of the circuit courts of appeals for its assertion that "seizure of an automobile has long been a recognized exception to the warrant requirement." [2] Most of the cases emanate, either directly or indirectly, from the Second Circuit's opinion in *United States v. Francolino*, 367 F.2d 1013 (2d Cir. 1966), *cert. denied*, 386 U.S. 960, 87 S.Ct. 1020, 18 L.Ed.2d 110 (1967). In that case, the court upheld a warrantless search of an automobile for contraband. Judge Friendly's opinion for the court stated, as one ground for the holding, that a warrant was not required for the search because the federal agent had probable cause to believe that the car was subject to seizure and forfeiture under 49 U.S.C. §§ 781–83. *Id.* at 1018–22. Judge Friendly apparently believed that Congress's enactment of a forfeiture provision diminishes the protection afforded under the Fourth Amendment when an individual's property falls within the purview of the statute.

The court finds support for the *Francolino* line of cases in two fairly recent Supreme Court decisions. In the first of these, *Cooper v. California*, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), the Court upheld a warrantless search of a car that had been seized, without a warrant, pursuant to a California forfeiture statute because it had been used in connection with illegal narcotics transactions. The Court's opinion, however, addressed only the legality of the search; the Court apparently assumed that the car had been legally seized.[3] Moreover, examination of the relevant statutory provision in *Cooper* reveals that the seizure there was "unquestionably legal" for reasons independent of the state's asserted right to forfeit the car.[4] Finally, the parties in *Cooper* neither briefed nor argued the constitutionality of the seizure; Cooper, in his brief, conceded that the seizure was legal. I therefore do not attribute to the Court any opinion on an issue of constitutional importance that was never presented to it for review.

The second case providing support for the *Francolino* line of cases is the Court's recent decision in *G. M. Leasing Corp. v. United States*, 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977). The I.R.S. had determined deficiencies in the returns of a taxpayer who was a fugitive from justice. To satisfy the tax liability, agents of the I.R.S., acting without a warrant, seized several

---

exception justifies warrantless seizure of a car subject to forfeiture.

2. The majority's citation of Justice Brennan's dissent in *Cady v. Dombrowski*, 413 U.S. 433, 450, 93 S.Ct. 2523, 2532, 37 L.Ed.2d 706 (1973), implies that he and his fellow dissenters acknowledged this exception. The context of the language quoted by the majority makes clear, however, that what Justice Brennan said was merely that an exception to the warrant requirement permits a warrantless inventory search of an automobile following a seizure pursuant to a forfeiture statute.

3. In *Coolidge v. New Hampshire*, 403 U.S. 443, 464 n. 21, 91 S.Ct. 2022, 2037 n. 21, 29 L.Ed.2d 564 (1971), a plurality of the Court explained that "[i]n *Cooper*, the seizure of the petitioner's car was mandated by California statute, *and its*

legality was not questioned. The case stands for the proposition that, given an unquestionably legal seizure, there are special circumstances that may validate a subsequent warrantless search." (Emphasis added.)

4. The Court emphasized that section of the California statute providing that an officer making a narcotics arrest was to seize any vehicle used to transport or facilitate the possession of narcotics and that the vehicle was "to be held as evidence until a forfeiture has been declared or a release ordered." Cal. Health & Safety Code § 11611. The Court mentioned only in a footnote section 11610, which provides that an owner's property interest in such a vehicle is extinguished. *See also United States v. Zaicek*, 519 F.2d 412, 416 (2d Cir. 1975) (Oakes, J., dissenting).

automobiles belonging to the taxpayer[5] pursuant to 26 U.S.C. § 6331(a). The Court rejected, in one paragraph, the taxpayer's claim that these seizures violated the Fourth Amendment:

"The seizures of the automobiles in this case took place on public streets, parking lots, or other open places, and did not involve any invasions of privacy. In *Murray's Lessee v. Hoboken Land & Improv. Co.*, 18 How. (59 U.S.) 272, 15 L.Ed. 372 (1856), this Court held that a judicial warrant is not required for the seizure of a debtor's land in satisfaction of a claim of the United States. The seizure in *Murray's Lessee* was made through a transfer of title which did not involve an invasion of privacy. The warrantless seizures of the automobiles in this case are governed by the same principles and therefore were not unconstitutional. See also *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924) (liquor seized in open field)." *Id.* at 351–52, 97 S.Ct. at 628 (footnote omitted).

In a footnote, the Court added: "If additional support were needed for this result, it is found in the Court's decisions sustaining the right of the Government to collect taxes by summary administrative proceedings." *Id.* at 352 n. 18, 97 S.Ct. at 628 n. 18.

The precise rationale and scope of the Court's holdings are difficult to discern. The prominent reference to "invasion of privacy", together with the Court's relegation to a footnote of its discussion of the special considerations inherent in tax levies, suggests that the opinion was based more on considerations of privacy than on the policies underlying effective tax collection. In *United States v. One 1972 Chevrolet Nova*, 560 F.2d 464, 468 n. 2 (1st Cir. 1977), however, we declined to apply *G. M. Leasing* as establishing that "automobiles may always be seized from public places when there is probable cause to believe that the government's property interest therein is superior to the owner's." I would adhere to that dictum today, since I find in the reasoning underlying *G. M. Leasing* a limiting principle, consistent with the Court's implication in its footnote that the decision was not a *sui generis* tax case, that restricts the application of that decision to a narrow class of cases.

The Court stated in *G. M. Leasing* that the legality of the warrantless seizures of the taxpayer's cars was governed by "the same principle" that underlay the decision in *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. (18 How.) 272, 15 L.Ed. 372 (1856). In *Murray's Lessee*, the challenged action was a levy for the satisfaction of a debt owed to the government. The Court stated that the Fourth Amendment did not apply "to civil proceedings for the recovery of debts." *Id.* at 285. There was no question, however, of the existence of the debt satisfied by the seizure: the executive order to seize the debtor's property constituted "conclusive evidence of the facts recited in it, and of the authority to make the levy." *Id.* Similarly, in *G. M. Leasing* there was no question, at the time of the seizure, that the government was entitled to levy the taxpayer's property to satisfy his existing tax liability. 429 U.S. at 351, 97 S.Ct. at 627. The Commissioner's determination of the correctness of a tax assessment is presumptively correct. *See Psaty v. United States*, 442 F.2d 1154, 1159 (3d Cir. 1971); *Adams v. United States*, 358 F.2d 986, 994, 175 Ct.Cl. 288 (1966).

The purpose of the warrant requirement in a forfeiture seizure case is to obtain a neutral magistrate's determination of probable cause to believe that the government in fact has a superior possessory right to the property. Where the government is entitled to a presumption of the correctness of its claim to property, as in a tax levy case pursuant to 26 U.S.C. § 6331, the magistrate would have no basis upon which to reject a warrant application. To require a judicially authorized warrant in such cases would, therefore, serve no salutary func-

---

5. The automobiles actually belonged to a corporation that the I.R.S. determined was the alter ego of the taxpayer.

tion. In a case involving a forfeiture as a result of the use of property in a criminal enterprise, on the other hand, no such presumption of correctness attaches to the government's assertion of a statutory right to the property. The determination that property constitutes forfeitable derivative contraband "often depends on the making of delicate judgments about previous facts and circumstances." *Melendez v. Shultz*, 356 F.Supp. 1205, 1210–11 (D.Mass.) (three-judge court), *appeal dismissed for lack of jurisdiction*, 486 F.2d 1032 (1st Cir. 1973). Such judgments fall squarely within the intended role of the magistrate under the Fourth Amendment.[6]

The majority asserts that no Supreme Court authority on point establishes the unconstitutionality of the seizure in this case.[7] The Court has, however, repeatedly stated the premise that warrantless seizures are "*per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). Consistently with this principle, in recognizing exceptions to the warrant requirement the Court has required law enforcement officers to show that "the exigencies of the situation" make dispensing with the warrant requirement "imperative", *McDonald v. United States*, 335 U.S. 451, 456, 69 S.Ct.

191, 193, 93 L.Ed. 153 (1948), *quoted in Coolidge v. New Hampshire, supra*, 403 U.S. at 455, 91 S.Ct. at 2032. Since I do not find that either of the cases relied on by the majority creates a "forfeiture exception", the burden is on the government to establish that an exception here is required to "accommodate the identified needs of society", *Arkansas v. Sanders*, 442 U.S. 753, 760, 99 S.Ct. 2586, 2591, 61 L.Ed.2d 235 (1979). I can perceive no compelling societal interest that makes "imperative" a warrantless seizure where, as in this case, the exigency arises not because the law enforcement officers desire to act immediately upon information giving them probable cause to seize, but rather because they have failed, for whatever reason, to avail themselves of ample time to procure a warrant between obtaining such information and executing the seizure.[8]

In the leading circuit court opinion opposed to the majority's decision, *United States v. McCormick*, 502 F.2d 281 (9th Cir. 1974); *accord, United States v. Karp*, 508 F.2d 1122 (9th Cir. 1974), the Ninth Circuit relied on the Supreme Court's decision in *Almeida-Sanchez v. United States*, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), in concluding that Congress could not establish a "forfeiture exception" to the Fourth Amendment. In *Almeida-Sanchez*, which involved a warrantless search ostensibly au-

**6.** This explanation of *G. M. Leasing* is not inconsistent with the importance the Court apparently attached to the absence of any invasion of privacy in seizing cars parked on a public street. I do not believe the Court intended to hold that the only Fourth Amendment interest implicated in a forfeiture seizure is the possible invasion of privacy incidental to the execution of the seizure. Instead, I read the Court as saying that although the government need not, under the special circumstances present in *G. M. Leasing* and *Murray's Lessee*, obtain a warrant to levy against a debtor's property, it must still avoid any other invasion of the debtor's privacy unless it comes armed with a search warrant. *See G. M. Leasing*, 429 U.S. at 358–59, 97 S.Ct. at 631–32.

**7.** The majority also suggests that by going against "solid precedent" and creating diversity of rules in the circuits we would be undermining the processes of law enforcement. Although the weight of authority favors the ma-

jority's view of the legality of warrantless forfeiture seizures, the courts are not unanimous. *See United States v. McCormick*, 502 F.2d 281 (9th Cir. 1974); *United States v. Thrower*, 442 F.Supp. 272 (E.D.Pa.1977); *Melendez v. Shultz*, 356 F.Supp. 1205 (D.Mass.) (three-judge court), *appeal dismissed for lack of jurisdiction*, 486 F.2d 1032 (1st Cir. 1973). I do not believe we would be doing the citizenry a disservice by forbidding law enforcement authorities to do what, in my view, the Constitution and current Supreme Court precedent say they may not.

**8.** We are concerned in this case only with items of derivative contraband, otherwise innocent objects that become tainted by illegality as a result of their use in some illicit activity. Different considerations of exigency might enter the calculus if the object to be seized was inherently dangerous or *per se* contrary to public policy. *See Melendez v. Shultz, supra*, 356 F.Supp. at 1210.

thorized by a federal statute, the Court observed that "no Act of Congress can authorize a violation of the Constitution." 413 U.S. at 272, 93 S.Ct. at 2539. Thus, the Court held the search unconstitutional because it did not fall within one of the existing exceptions to the warrant requirement. The *McCormick* court, finding that the Court had never excepted forfeiture seizures from the warrant requirement, therefore concluded that the validity of a seizure under 49 U.S.C. § 782 depended on whether it was authorized by the incident-to-arrest, plain view, or automobile exceptions. 502 F.2d at 288–89; *accord, Melendez v. Shultz, supra,* 356 F.Supp. at 1210–11.

While I take issue with the majority's reading of the relevant Supreme Court decisions, I differ most strongly with its conclusion that allowing warrantless seizures for forfeiture purposes works "no insult to personal liberty, or threat to property." An individual's privacy might not be violated to the same extent by a governmental seizure of his property as it is by a warrantless search. But the Fourth Amendment also protects the individual's right to the use and possession of his property, *see Katz v. United States, supra,* 389 U.S. at 350, 88 S.Ct. at 510; Note, *Warrantless Searches and Seizures of Automobiles,* 87 Harv.L. Rev. 835, 840 (1974), and seizure of one's property is a significant invasion of that protected interest. Such a seizure may transcend mere inconvenience and cause unforeseeable and irremediable harm to a person whose automobile is taken from him without warning or notice at a time when his need for the vehicle is particularly great. This infringement of the individual's constitutionally protected possessory interest is especially acute in the case of a forfeiture seizure, since the property is likely to remain in the possession of the government for a prolonged period of time while the forfeiture claim is litigated. *See* 2 W. LaFave, *Search and Seizure* § 7.3 at 546 (1978).

The court bolsters its argument by noting that an individual loses his interest in property used to violate the revenue laws at the moment of such illegal use. The court ap-

parently finds the Fourth Amendment adequately served by the seizing officer's determination that the property was in fact illegally used. In other words, the proposition is that once an officer thinks he has probable cause to believe that property has been used to further some activity proscribed by the statute, the owner no longer has any constitutionally protected interest in the property and a warrant is unnecessary. This reasoning, however, undercuts the basic premise of the warrant requirement. As the Court recently reiterated in *Arkansas v. Sanders, supra,* 442 U.S. at 759, 99 S.Ct. at 2590: "By requiring that conclusions concerning probable cause 'be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime', *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948), we minimize the risk of unreasonable assertions of executive authority." I fail to see why, absent exigent circumstances, an individual should be less entitled to such a determination when the government seeks to seize and forfeit his automobile than when it seeks to search his personal effects.

II.

The court also relies in part on the automobile exception to the warrant requirement. This exception was first articulated by the Supreme Court in *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), in which the Court held that a warrant to search an automobile was unnecessary under circumstances in which a vehicle could quickly be moved out of the control and jurisdiction of the police. The rationale of that decision was that it was not practicable for officers to procure a warrant under such circumstances. *Id.* at 153, 45 S.Ct. at 285. The Court's subsequent decisions applying the automobile exception have repeatedly noted that "the inherent mobility of automobiles creates circumstances of such exigency that, as a practical necessity, rigorous enforcement of the warrant requirement is impossible."

*South Dakota v. Opperman,* 428 U.S. 364, 367, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000 (1976); *see e. g., United States v. Chadwick,* 433 U.S. 1, 12, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538 (1977); *Coolidge v. New Hampshire,* 403 U.S. 443, 459–60, 91 S.Ct. 2022, 2034, 29 L.Ed.2d 564 (1971); *Chambers v. Maroney,* 399 U.S. 42, 49–50, 90 S.Ct. 1975, 1980, 26 L.Ed.2d 419 (1970).

The degree of exigency required to bring a search or seizure within the automobile exception was left in doubt, however, by the Court's decision in *Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974). Four members of the Court, joined only in the judgment by Justice Powell,[9] held that

"[e]xigent circumstances with regard to vehicles are not limited to situations where probable cause is unforeseeable and arises only at the time of arrest. The exigency may arise at any time, . . ." *Id.* at 595–96, 94 S.Ct. at 2472 (citation omitted).

The four dissenters noted that "it can scarcely be said that probable cause was not discovered until so late a point in time as to prevent the obtaining of a warrant for seizure of the automobile." *Id.* at 599, 94 S.Ct. at 2473 (Stewart, J., dissenting).

They concluded that the absence of any exigency precluded reliance on the automobile exception.

In this case the investigation of Zullo had generated probable cause to believe that the Pontiac was subject to forfeiture several months before it was actually seized. The applicability of the automobile exception, therefore, turns on which of the competing *Cardwell* standards the court adopts.[10] My brothers find the plurality view convincing. In light of the strict approach taken by the Supreme Court to the various exceptions to the warrant requirement, *see Arkansas v. Sanders, supra,* 442 U.S. at 760, 99 S.Ct. at 2591 (reach of each exception limited to "that which is necessary to accommodate the identified needs of society"), I find it difficult to accept the plurality's view that "the exigency may arise at any time." *See Chambers v. Maroney, supra,* 399 U.S. at 50–51, 90 S.Ct. at 1980–1981.[11] The policy underlying the automobile exception does not justify warrantless seizures in the absence of contemporaneously arising probable cause and a danger that the car may be removed from the jurisdiction if it is not seized immediately. *See G. M. Leasing Corp. v. United*

9. Justice Powell did not address the merits at all, stating instead his opinion that the Court should not review Fourth Amendment challenges to state court convictions on petition for habeas corpus.

10. In *United States v. One 1972 Chevrolet Nova,* 560 F.2d 464 (1st Cir. 1977), we stated that an automobile may be seized "at least" when the police have probable cause to believe the car is subject to seizure, there is a reasonable likelihood that the car would or could be moved, and "the probable cause was not discovered until so late a time as to prevent the officers from securing a warrant earlier." *Id.* at 467 (citing *Cardwell v. Lewis, supra* (Stewart, J., dissenting)). Because we concluded that the car in question could easily have been moved and that the officers had no prior probable cause to believe the car had been used to transport narcotics, we did not have to choose between the competing approaches in the *Cardwell* plurality and dissent.

11. In *Chambers,* the Court said that a warrantless seizure of a car was justified when the circumstances providing probable cause were unforeseeable and the opportunity to search

was fleeting due to the mobility of the car. 399 U.S. at 50–51, 90 S.Ct. at 1980–1981. The implication is that if either of these conditions was lacking—if the officers had prior probable cause to seize the car or there was no danger of immediate flight—a warrantless search or seizure would not have been justified. In *Coolidge,* the Court stated that "there is a significant constitutional difference between stopping, seizing, and searching a car on the open highway, and entering private property to seize and search an unoccupied, parked vehicle not then being used for any illegal activity." 403 U.S. at 463 n. 20, 91 S.Ct. at 2036 n. 20. Although the *Cardwell* plurality read this aspect of the *Coolidge* opinion as focusing only on the individual's privacy interest, in view of the original, and in my view predominant, rationale of the automobile exception—exigency—I think the reduced risk of immediate flight was also a factual distinction of constitutional importance. I think that *Chambers* and *Coolidge,* read together, imply that exigent circumstances *at the time of the seizure* are necessary to justify warrantless police action.

*States, supra,* 429 U.S. at 359, 97 S.Ct. at 632 (holding that a warrantless entry onto business premises to seize assets subject to tax lien was not justified by exigent circumstances, since agents had delayed two days between ascertaining that contents of premises were seizable and effecting seizure).

The significance of the "mobility" of an unoccupied car subject to seizure under a forfeiture statute is different from that justifying the automobile exception in such cases as *Chambers v. Maroney, supra.* The plurality in *Cardwell v. Lewis* stated that there was no significant difference between a car stopped on the highway and a car seized from a parking lot in terms of the inherent mobility of the car. In *Coolidge v. New Hampshire, supra,* however, the Court noted that the mobility of a car, as a characteristic distinguishing it from other objects, becomes less significant when the car is unoccupied and not being used for any illegal purpose at the time of seizure. 403 U.S. at 461 n. 18, 91 S.Ct. at 2035 n. 18. An unoccupied car, said the Court, is little different from a suitcase or a box since "given the virtually universal availability of automobiles in our society there is little difference between driving the container itself away and driving it away in a vehicle." *Id. See United States v. Francolino,* 367 F.2d 1013, 1023 (2d Cir. 1966) (Kaufman, J., concurring).

The stipulated facts in this case paint something less than a convincing picture of exigency at the time of the seizure of the Pontiac. The car was unoccupied and was not involved in any criminal activity at the time it was seized. *See Coolidge v. New Hampshire, supra,* 403 U.S. at 463 n. 20, 91 S.Ct. at 2036 n. 20. Since the federal agents were armed with a warrant for Zullo's arrest, they could keep him from spiriting the car away. Nor is there anything in the record suggesting that after they began their effort to place Zullo under arrest, he

was ever at large with the knowledge that he was a fugitive from justice. Although it is conceivable that claimant or a friend or accomplice of Zullo's might have attempted to remove the Pontiac, the agents had no concrete evidence to believe that flight was imminent. I believe that exigency sufficient to justify dispensing with the warrant requirement must rest on more than mere speculation.

Nor do I think that the seizure of the Pontiac can be justified under the privacy rationale for the automobile exception. While the Court has increasingly relied on the diminished expectation of privacy in an automobile to distinguish automobile searches from searches of other personal effects, *see, e. g. United States v. Chadwick,* 433 U.S. 1, 12–13, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538 (1977); *Cardwell v. Lewis, supra,* 417 U.S. at 590, 94 S.Ct. 2469, this rationale is considerably less compelling in the context of seizures. The perceived difference in the levels of expectation of privacy diminishes to insignificance when the governmental action at issue is a seizure rather than a search of a person's effects. Although an individual's interest in not having his suitcase or briefcase searched may be greater than preserving the privacy of the interior of his car, it is protection against the infringement of his right to use and possession that the Fourth Amendment provides in the case of a seizure. And the loss of dominion and possession is the same whether the object seized is an automobile or a suitcase. Moreover, this intrusion is independent of any invasion of privacy incidental to the execution of the seizure. *See Katz v. United States, supra,* 389 U.S. at 350 & n. 4, 88 S.Ct. at 510 & n. 4; *compare G. M. Leasing Corp. v. United States, supra,* 429 U.S. at 353–59, 97 S.Ct. at 629–30. Thus, the privacy rationale for the automobile exception is generally inapplicable when the concern is the seizure rather than the search of property.[12]

12. To the extent that an automobile moves on the highway, is subject to state regulation, and may endanger others, its owner may have a diminished possessory interest under some circumstances. *See, e. g., Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973) (warrantless seizure of automobile that had been involved in an accident and posed a

In sum, since I do not believe the Supreme Court has recognized any "forfeiture exception" that would be applicable in this case, and since I do not believe the facts of this seizure bring it within the scope of the automobile exception, I would hold that the warrantless seizure of claimant's car violated the Fourth Amendment. To the extent that 26 U.S.C. § 7302 purports to authorize such a seizure, it is unconstitutional as applied.

### III.

The court states that even if the seizure in this case was unconstitutional, "it is not clear why an inadequacy in the process used to secure . . . possession would or should defeat the government's . . . entitlement to the property." In *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965), however, the Supreme Court made clear that "inadequacy in the process used to secure possession" may indeed defeat the government's right to possession, at least to the extent that the government is barred from introducing illegally seized evidence to prove its claim of forfeitability. The holding in *Plymouth Sedan* does not control this case. The question remains, however, whether the rationale of that decision extends to the situation in this case, where it is not the procurement of evidence but the act of obtaining possession of the object itself that violates the Fourth Amendment.

In *Berkowitz v. United States*, 340 F.2d 168 (1st Cir. 1965), a majority of this court stated that the government was not entitled to forfeiture of contraband money "when it discovered and seized that money only by a direct invasion of [appellant's] constitutional rights" because to hold otherwise "would be attaching too great a premium upon unconstitutional conduct." 340

F.2d at 174 (Aldrich, C. J., concurring). I can conceive of no principled basis for thinking that the outcome in *Berkowitz* would have been different if the government had violated the Constitution only in the act of seizing, but not in the course of discovering the contraband.[13] I agree with the analysis of the court in *Melendez v. Shultz, supra* :

"Thus were we to sustain the present warrantless seizure, we would be holding that an automobile could itself be seized in the unbridled discretion of an officer although under *One 1958 Plymouth Sedan, supra*, had the same officer merely searched the same automobile without a warrant, any fruits of his search . . . would have to be suppressed as evidence in a future forfeiture proceeding involving the automobile. If there is any logic to such a result, we fail to see it. The right of the automobile owner not to have it searched is no more worthy of protection than his right not to have it seized without legal procedure." 356 F.Supp. at 1210.

Concluding that the rationale of the exclusionary rule applies to illegal seizures for forfeiture purposes does not end the problem, however. The question remains how to apply the remedy in this context. The Supreme Court has stated that the "primary" justification for the exclusionary rule is deterrence of unconstitutional police conduct. *See Stone v. Powell*, 428 U.S. 465, 486, 96 S.Ct. 3037, 3048, 49 L.Ed.2d 1067 (1976). Merely barring the government from obtaining forfeiture in this proceeding and requiring the return of the property to its owner would appear to contribute little of the deterrent effect that results from application of the rule to suppress illegally obtained evidence at a criminal trial. Since property subject to a forfeiture action enjoys no protection against double jeopardy,

---

danger to traffic permissible). *Dombrowski* may have turned in part on the diminished interest in property that has been abandoned.

**13.** In *Interbartolo v. United States*, 303 F.2d 34 (1st Cir. 1962), we held that an illegal seizure would not bar forfeiture. In *United States v. One 1972 Chevrolet Nova*, 560 F.2d 464, 467

(1st Cir. 1977), we noted, but did not decide, that *Berkowitz* might be regarded as having overruled *Interbartolo* or that, even independently of *Berkowitz*, *Interbartolo* should no longer be followed. I believe that the position stated by *Interbartolo* should no longer be the law of this circuit.

*One Lot Emerald Cut Stones v. United States*, 409 U.S. 232, 235, 93 S.Ct. 489, 492, 34 L.Ed.2d 438 (1972), if the property here is returned and if the government can then obtain a warrant from a magistrate upon a showing of probable cause, federal agents can reseize the property immediately and initiate a new forfeiture proceeding. The effect of "excluding" the property from use in the first forfeiture proceeding will thus be little more than a minor irritant to the government and will result in a waste of judicial time and resources.

The exclusionary rule is a judge-made remedy, not a statutory prescription. It appears to me, therefore, both permissible and reasonable to treat forfeiture cases as what they are—*sui generis*—and apply the exclusionary rule not in the same manner as in the commonplace suppression case, but in a way that is consistent with the underlying purpose of the rule. Some guidance is suggested by rule 41(e) of the Federal Rules of Criminal Procedure, which provides that property obtained as a result of an illegal search and seizure should be returned to a person entitled to lawful possession and may not be used in any subsequent criminal proceeding.[14] By analogy, once the government has violated the Fourth Amendment by impermissibly effecting a warrantless seizure of property, I believe it should be forever barred from maintaining a civil action for forfeiture against that property.[15]

Such an approach would be consistent with the balance struck by the Supreme Court between the rights of the individual and the needs of society inherent in effective law enforcement. When the exclusionary rule is applied to exclude evidence at a criminal trial, the result is often, though not necessarily, the destruction of the government's case and the release of a defendant who is guilty of the crime charged. This is a social cost we are willing to pay to preserve the rights guaranteed to all by the Fourth Amendment. But the Court has been unwilling to extend the rule to bar the government from proceeding against an individual who was illegally arrested. *See United States v. Crews*, —— U.S. ——, ——, 100 S.Ct. 1244, 1250, 63 L.Ed.2d 537 (1980). The price would be to high. In the context of forfeiture actions, however, no criminal goes free as a result of a rule "excluding" the object of the action. Forfeiture provisions are collateral to the primary punitive and deterrent functions of substantive criminal statutes. *See Doherty v. United States*, 500 F.2d 540, 544–45 (Ct. Cl.1974) (forfeiture statutes are "a regulatory and remedial complement to . . . criminal sanctions"). Thus, although a significant deterrent to illegal police forfeiture seizures may be achieved only by a rule that exceeds the limits of the exclusionary rule as it is ordinarily applied, the societal cost of this rule is not great since the only loss to the government is its possessory right to property that has become contraband as a result of its use as an instrument of a crime.

For these reasons, I believe that because the seizure of the car in this case was violative of the Fourth Amendment, the government is barred from having forfeiture in this or any future proceeding.

---

**14.** The 1972 amendments to rule 41(e) deleted a provision that granted the government authority to retain property, notwithstanding its unlawful seizure, if the property was "otherwise subject to lawful retention". The amended rule, therefore, implicitly rejects the argument made by the court that the government's assertion of a statutory right to possession of property somehow negates the owner's right to redress for an unlawful seizure.

**15.** As I have noted above, *see* note 8, *supra*, this rule should apply only to items of derivative contraband, not objects that are *per se* illegal or inherently dangerous.